STATE, Appellant, v. RUSSELL, Respondent.

*No. State 118.  Argued October 3, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 637.)

714

For the appellant there was a brief by *Robert W. Warren,* attorney general, *Bruce E. Schroeder,* Kenosha county district attorney, and *Mario J. Ventura, Jr.,* Kenosha county assistant district attorney, and oral argument by *James Petersen,* assistant attorney general.

For the respondent there was a brief by *Merlin L. Cotton* and *Cotton, Rose & Rose,* all of Kenosha, and oral argument by *Merlin L. Cotton.*

BEILFUSS, J.   For the purposes of these appeals we accept the statement of facts set forth in the brief as follows:

An armed robbery took place at approximately 12:45 a. m., on August 2, 1972, at the Union Park Tavern, in the city of Kenosha. Three black men, all dressed in dark clothing, one wearing a red floppy hat, entered the tavern and at gunpoint robbed the bartender, Miriam Konzen, and her only customer at the time, Delbert

Halversen (also Halverson). The three men were in the tavern approximately two or three minutes. Miriam Konzen was forced to turn over to these men approximately $99.25 from the cash register. Delbert Halversen was forced to turn over approximately $5 from his wallet. All the currency, including a Canadian dollar bill, serial number 3047913, was placed in a paper bag. The three men forced Miriam Konzen and Delbert Halversen into a cooler behind the bar. They then left taking the money with them.

The police were called by Miriam Konzen about one minute after the robbers left and two police officers arrived within two to three minutes thereafter. The officers took a general description from Miriam Konzen and Delbert Halversen and broadcasted this description by police radio to police headquarters. Officers Gary Sentieri and John Sturino overheard this broadcast and moments later observed a light colored vehicle containing three black males in dark clothes, one wearing a red floppy hat, traveling not far from the scene of the robbery.

These officers engaged their red lights and stopped the vehicle after a short chase. As both cars came to a stop, officers radioed to police headquarters the license number of the vehicle they had stopped and indicated, in the words of Officer Sturino, that he thought that he and his partner had the subjects they were looking for. This took place approximately seven minutes after the armed robbery had occurred.

The driver of the stopped vehicle got out and walked back and was met by Officer Sturino. Officer Sentieri walked up and informed the driver that an armed robbery had taken place, that the driver and passengers matched the descriptions, and would he consent to being searched. He consented. Officer Sturino asked the passenger in the front seat of the vehicle in question

to exit and he was searched. Officer Sentieri, after searching the driver, went over to the vehicle and asked the defendant-respondent, who was seated in the rear seat of the vehicle, to get out. He was asked if he could be searched and he consented. While he was being searched, Officer Sentieri found a .38 revolver tucked between his pants and his stomach. Officer Sentieri arrested the defendant immediately and signaled his partner, Officer Sturino, as to what he had found. The other two were then arrested and placed in the squad car.

Officer Sturino then went to the driver's side of the vehicle. The door had remained open after the driver had exited. The interior lights of the vehicle were on. Officer Sturino shined his flashlight into the front seat area of the vehicle. He observed what appeared to be a black handle of a weapon sticking out from under the front seat. He removed a .22-caliber revolver and as he pulled it out he heard it click on another metal object. He put his hand under the seat and pulled out another .22-caliber weapon. As he pulled this second weapon out from under the seat he heard a rustling sound and he reached under the seat again and pulled out a brown paper bag containing $95 and one Canadian dollar bill, serial number 3047913.

The officers at the scene of the arrest radioed in to police headquarters that they were bringing the three men in and requested that Miriam Konzen and Delbert Halversen meet them at police headquarters. Miriam Konzen was taken down to police headquarters by the investigating officers at approximately 1:05 a. m., on August 2, 1972. Delbert Halversen drove his own car down about the same time. When both arrived they were asked to go upstairs to the booking area of police headquarters for identification purposes.

When both Miriam Konzen and Delbert Halversen arrived upstairs they were asked by officers present to

look into the room through a one-way glass. Officers asked Miriam Konzen and Delbert Halversen if these were the three men in the tavern. Both responded that they were. Nothing else was said to them by the officers.

The defendant-respondent and his fellow defendants were then locked up until 2 p. m., on August 2, 1972, when the district attorney filed complaints on all three for armed robbery.

In addition to the facts set forth above, counsel for the parties have stipulated:

"1. That the search of the vehicle in which the defendant was riding just prior to his arrest and in which the alleged loot with reference to the armed robbery charge in the above entitled action was found was made without a warrant.

"2. That the aforesaid search was not made pursuant to any consent.

"3. That the aforesaid alleged loot was found under the seat of the aforesaid automobile.

"4. That the aforesaid search was made at a time when said occupants, including the defendant, were not in the car and at a time when the car was empty."

There is no challenge as to the legality of the arrest without a warrant. Nor could one be made successfully —the police had ample probable cause to arrest all three occupants of the vehicle without warrants.

After hearing the testimony on the motion to suppress, the trial court denied the motion insofar as it applied to the gun taken from the defendant's person as a valid search for weapons for the protection of the police. It further denied the motion as to the gun taken from the car which was partially visible protruding from the seat as a permissible search for weapons and as a seizure of evidence in plain view. We agree and, in any event, there is no issue as to these two items.

The trial court did grant the motion to suppress the evidence of the second gun seized from under the seat

and the paper bag and its contents upon the ground that, although the officers had probable cause to search, there was no necessity to do so without a search warrant. We disagree. This search without a warrant can be justified upon two grounds. First, it was a search incident to a valid arrest for the fruits of the crime for which the defendants were arrested. This was not just a random search that turned up evidence unknown to exist by the searching officers.

Second, it was a valid search based upon probable cause. The robbery had taken place no longer than ten minutes before the search. It was probable the stolen money was on the persons arrested or in the car they were using to flee from the scene of the robbery. Under these facts, to require that an officer remain with the car (this is at 12:45 a. m.) until a search warrant could be obtained, or otherwise impound the car and then obtain a search warrant, appears to be an illogical and unnecessary imposition of form over substance. The search of the vehicle in this case was based upon facts known to the officer which would lead any reasonable police officer to believe that it was not only probable, but highly probable, that the fruits of the crime were near at hand. The search described above was reasonable police activity—not an unreasonable search nor deprivation of privacy as prohibited by both the federal and state constitutions.

The United States Supreme Court in *Chambers v. Maroney* (1970), 399 U. S. 42, 47, 48, 90 Sup. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U. S. 856, 91 Sup. Ct. 23, 27 L. Ed. 2d 94, stated:

"There are, however, alternative grounds arguably justifying the search of the car in this case. In *Preston, supra,* the arrest was for vagrancy; it was apparent that the officers had no cause to believe that evidence of crime was concealed in the auto. In *Dyke, supra,* the Court expressly rejected the suggestion that there was

probable cause to search the car, 391 U. S., at 221–222. Here the situation is different, for the police had probable cause to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon which would be carrying four men, one wearing a green sweater and another wearing a trench coat. As the state courts correctly held, there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money.

"In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll v. United States*, 267 U. S. 132 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. . . ." [1]

The order suppressing the evidence obtained in the warrantless search must be reversed and the motion denied.

The defendant appealed the order denying his motion to suppress the evidence of the police station identification. [2]

The defendant contends the police station out-of-court identifications should be suppressed as being in violation of the defendant's right to have counsel present at a

---

[1] *See also: Molina v. State* (1972), 53 Wis. 2d 662, 675, 193 N. W. 2d 874.

[2] The state acknowledges that even though an order denying a motion to suppress is ordinarily not appealable, the defendant may have a review of rulings prejudicial to him when the state has appealed a pretrial order. *See* sec. 274.12 (1), Stats., and *State v. Beals* (1971), 52 Wis. 2d 599, 191 N. W. 2d 221.

police lineup and as being unduly suggestive. These contentions are not sound.

The police station identifications were not police lineups that are usually staged and consist of comparison of two or more persons, some of whom are in no way connected with the crime. The procedure here is more accurately described as a police station "showup" [3] or one-to-one identification.

Counsel primarily relies upon our opinion in *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625. The language in *Hayes* requiring counsel at preindictment lineups has been withdrawn in *State v. Taylor*, ante, p. 506, 210 N. W. 2d 873. Thus *Hayes* does not apply because counsel is not required at a preindictment or precomplaint-warrant stage and, further, that the procedure here was not a lineup. [4]

Even though counsel was not required, the identification procedures, to comply with due process constitutional standards, must not be unduly suggestive so as to become unreliable.

The defendant argues that the identification procedure was unduly suggestive because only the three defendants were exhibited; they were the only black men with two white officers; that they were wearing clothing matching the clothing worn by the robbers; and because of the one-way glass they were not aware that they were being identified. None of these reasons either singly or collectively are such as to lead to a reasonable conclusion that the procedure was unduly suggestive. The robbers were three black men, the clothes worn by the defendants were their clothes with no attempt by the police to disguise or distort them to match the victims' descriptions, nor does it appear that the one-way glass in any manner

[3] *See Neil v. Biggers* (1972), 405 U. S. 954, 92 Sup. Ct. 1167, 31 L. Ed. 2d 230.

[4] *State v. DiMaggio* (1971), 49 Wis. 2d 565, 584–586, 182 N. W. 2d 466.

psychologically affected either the defendants or the persons making the identification.

The controlling consideration is not so much whether the procedure was suggestive but whether, under the totality of the circumstances, the identification was reliable.[5]

Under the facts as we have them before us, the identification was completed within one-half hour from the time of the robbery—certainly the time interval did not dull the witnesses' recollection, to the contrary, their recollection was probably quite vivid. Both witnesses were in close proximity to the robbers (admittedly for just a couple minutes) so as to be able to accurately observe the physical features and clothing of their assailants. Both witnesses were impressed by the "red floppy hat" worn by the defendant. The hat was probably not unique but certainly distinctive and easily recalled and recognized. Equally important both at the time of the identification and the suppression hearing, the two witnesses were positive and unequivocal in stating their belief that the defendants were their assailants.

Under the totality of these circumstances, we believe the trial court was correct in its conclusion that the identification procedure was not unduly suggestive and that the identifications were reliable.

*By the Court.*—The order granting the motion suppressing the evidence seized in the search of the vehicle is reversed; the order denying the motion to suppress the identification is affirmed; and the matter is remanded for further proceedings.

---

[5] *Neil v. Biggers, supra.*