STATE, Plaintiff-Appellant, v. DONOVAN,
Defendant-Respondent.

Court of Appeals

*No. 78–865–CR. Submitted on briefs June 13, 1979.—
Decided July 26, 1979.*
(Also reported in 283 N.W.2d 431.)

MOSER, J., dissents.

For the plaintiff-appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Jess Martinez, Jr.,* of Waukesha.

Before Decker, C.J., Cannon, P.J. and Moser, J.

DECKER, C.J.    James Perkins Donovan is a parking meter thief with a sophisticated *modus operandi.*

Donovan has been charged with theft and possession of a burglarious tool. The state appeals from an order of the trial court granting Donovan's motion to suppress

evidence, a homemade parking meter key, obtained by police officers in a search of Donovan's automobile.

On July 15, 1978, at about 9:30 p.m., Donovan entered a surveillance net set by the Milwaukee Police Department. Coins had been stolen from parking meters in the 700 block on North 11th Street. Two police officers undertook surveillance of the area. After both officers had checked the meters in the block and ascertained that they all contained coins, one officer was stationed in the second floor window of a Marquette University dormitory. The other officer remained on the street in the vicinity.

Donovan entered the area in his automobile and parked at a meter. He left his car, approached the meter and "placed his right hand up to the meter and his left hand up to the meter also with an unknown object in it and made a motion." The same procedure was followed at two meters. The surveillance officer radioed the street officer.

Donovan returned to his auto and seated himself in the front seat. The street officer arrived at the scene, and the surveillance officer then joined him at the scene, where a closer view of the automobile occupant assured them that he was James Perkins Donovan, as the officer had tentatively identified him in the view from the second floor window.

The surveillance officer approached the vehicle in which Donovan was seated, and observed a glove and United States coins (nickels, dimes and quarters) on the automobile seat next to Donovan, laying in the glove, and on the floor of the automobile. The surveillance officer then examined both parking meters for pry marks. None were discovered. The meters were opened, and although they earlier had contained United States coins, they were now empty. Donovan was then placed under arrest and his person searched, with no unusual results.

The surveillance officer had been present at two prior arrests of Donovan involving theft from parking meters. On those occasions keys to parking meters were recovered. In one instance, the key was located on the street fifteen to twenty feet from where he was physically arrested, and in another instance a key was recovered from a coolant compartment under the hood of his automobile. The surveillance officer was aware of Donovan's use of keys and an automobile in effectuating the theft of coins from parking meters.

When the search of Donovan's person failed to produce a parking meter key, the street area around where he was arrested was also unsuccessfully searched.

The front and rear seat area of the passenger compartment of the automobile was then searched without result. The steering wheel had a hole in it where the design was knocked out, so the steering wheel was taken apart, but no key was found. Further examination of the left door next to the driver's seat, where Donovan sat after reentry into the automobile before his arrest, revealed that when the window was rolled down, as it was, there was an opening of sufficient size to permit a key to be dropped into the door between the exterior and interior panels. The officer shook the door and heard a rattle inside the door.[1]

A Phillips screw driver was used to unfasten the bottom area of the interior panel, which was lifted up, and a fellow officer retrieved a tubular type key from the interior of the door. The key was then tested by using it to open the parking meters.

After the key was found, the car was impounded and towed "downtown."[2]

---

[1] On cross-examination, the officer agreed that the rattle was heard while the door panel was being unfastened.

[2] A place where the police maintained custody of the car.

The trial court found that there was no exigent circumstances which justified a warrantless search of the automobile. We disagree and reverse, because we believe that the trial court's findings are contrary to the great weight and clear preponderance of the evidence. *State v. Carter*, 33 Wis.2d 80, 90–91, 146 N.W.2d 466 (1966).

Three recent decisions—by the United States Supreme Court, *United States v. Chadwick*, 433 U.S. 1 (1977); by the Wisconsin Supreme Court, *Thompson v. State*, 83 Wis.2d 134, 265 N.W.2d 467 (1978); and by this court, *State v. Prober*, 87 Wis.2d 423, 275 N.W.2d 123 (1978)— have reviewed the application of the fourth amendment, United States Constitution, to automobile searches. Little purpose is served in retilling ground so recently cultivated. It is sufficient to restate the fundamental principles that are extensively documented in those decisions.

The ultimate standard applied to searches and seizures by the fourth amendment is "reasonableness."[3] Warrantless searches are *per se* unreasonable, unless made pursuant to established exceptions to the rule.[4] A warrantless search can only be justified as such an exception if there exists probable cause to search and exigent circumstances which justify dispensing with the need for a search warrant issued upon a finding, by a neutral and detached magistrate, of probable cause to search.[5] A warrantless search of one's person incident to his lawful arrest is permitted, as is search of the portion of an automobile in the immediate area of his person and within his pos-

---

[3] *Cooper v. California*, 386 U.S. 58 (1967); *United States v. Chadwick, supra* at 9.

[4] *Katz v. United States*, 389 U.S. 347, 357 (1967), *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971).

[5] *Johnson v. United States*, 333 U.S. 10, 13–14 (1948); *Coolidge v. New Hampshire, id.* at 449; *United States v. Chadwick, supra* at 9.

session.[6]  A warrantless search of an automobile, if attended by exigent circumstances, is reasonable if probable cause exists that the automobile is an instrumentality of a crime or contains contraband[7] such as, among other things, burglarious tools.  If an automobile is impounded, a warrantless custodial or inventory search is reasonable.[8]  Seizure of evidence in plain view is reasonable.[9]

The complexity inherent in the application of principles that are so simply formulated was understated by the United States Supreme Court when it characterized the law of warrantless searches as "something less than a seamless web."[10]

We turn to the facts of this case and the applicable search and seizure principles.

Reasonableness as the ultimate standard of lawfulness of a warrantless search is fulfilled only if its two components are met: (1) probable cause to search and (2) exigent circumstances that excuse application for a judicially authorized search warrant.

Although Donovan contends that probable cause to search the automobile was not established by the state, we find the above-described evidence to be patent, overwhelming, and conclusive of probable cause to search.

[6] *Chimel v. California*, 395 U.S. 752, 760 (1969); *Coolidge v. New Hampshire, id.* at 456.

[7] *Carroll v. United States*, 267 U.S. 132, 156 (1925); *Husty v. United States*, 282 U.S. 694 (1931); *Brinegar v. United States*, 338 U.S. 160 (1949); *Scher v. United States*, 305 U.S. 251 (1938); *Chambers v. Maroney*, 399 U.S. 42 (1970); and *Coolidge v. New Hampshire, supra.*

[8] *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976).

[9] *Coolidge v. New Hampshire, supra* at 465–472; *Warden v. Hayden*, 387 U.S. 294 (1967).

[10] *Cady v. Dombrowski*, 413 U.S. 433, 440 (1973).

Donovan, previously arrested on more than one occasion in connection with theft from parking meters, was known to use a key to open the meters. He used an automobile to transport himself and the burglarious tool (key) to the scene. The automobile parked upon the public highway at the meter afforded an air of innocence and legality in his approach to the parking meter. While under observation by a police officer, he approached a parking meter and made a motion with a hand in which he held an object. Although the meter was known to have money in it when Donovan approached it, after he departed, it was found to be empty. There was no pry marks or other evidence that entry to the coin compartment had been forced. United States coins, in denominations found in such meters, were in plain view in the automobile that was occupied by Donovan before and after his approach to the parking meters. Search of his person, which Donovan does not challenge, produced no key, although in his forays into parking meter coin boxes,[11] he was known to use a key as his means of entry. Search of the vicinity of his arrest and the parking meters did not produce a discarded key, although he was known to have used that method of ridding himself of the key when arrested on another occasion. Donovan also was

[11] There is no need for circumspection in characterizing Donovan's past conduct. We need not concern ourselves with assumptions of innocence or guilt. We address ourselves to a legal determination of reasonableness to resolve a legal question of admission or exclusion of evidence. Necessarily, probable cause to conduct a warrantless search is a justificatory conclusion reached by weighing the search-directing officer's state of mind against the supporting facts. What the officer knew about Donovan's thievery constituted evidence that showed the state of the officer's mind in conducting the searches described. Although not admissible for the purposes of convicting him of this or a similar charge of parking meter theft, it is admissible for the purpose of resolving the exclusion motion. *Molina v. State*, 53 Wis.2d 662, 671, n. 12, 193 N.W.2d 874 (1972).

known, on a previous occasion, to hide a parking meter key within his automobile.

Where else to look but the automobile occupied by Donovan?

One may ask for justification for the persistence of the investigation and intrusion into the automobile. We view the missing key as an important link in the state's circumstantial evidence. The surveillance officer did not testify at the suppression hearing that he saw Donovan take coins from the parking meter. There was no direct evidence that the coins found in the automobile were taken from the parking meters.[12] Discovery of a parking meter key in the "possession" of Donovan was an important circumstantial evidentiary link.

We also note that the intruding searches of the steering wheel and the left door panel were prompted by slots that could readily accommodate a speedy concealment of the burglarious tool. Those areas were immediately proximate to Donovan's position in the automobile and constructively in his possession.

We believe that the circumstances of this case are comparable and parallel to the search of an automobile discussed in *State v. Russell*, 60 Wis.2d 712, 211 N.W.2d 637 (1973). In that case, police officers had stopped a car containing three occupants because the car and occupants matched a police radio report of an armed robbery. The money taken included a Canadian dollar bill with a known serial number. The driver and a passenger consented to a search. The passenger possessed a revolver. The driver and both passengers were arrested, and a police officer then searched the automobile in the manner described by our supreme court:

---

[12] Cross-examination of the officer at the suppression hearing developed the fact that among the coins in the automobile was an opened "role" of nickels.

Officer Sturino then went to the driver's side of the vehicle. The door had remained open after the driver had existed. The interior lights of the vehicle were on. Officer Sturino shined his flashlight into the front seat area of the vehicle. He observed what appeared to be a black handle of a weapon sticking out from under the front seat. He removed a .22-caliber revolver and as he pulled it out he heard it click on another metal object. He put his hand under the seat and pulled out another .22-caliber weapon. As he pulled this second weapon out from under the seat he heard a rustling sound and he reached under the seat again and pulled out a brown paper bag containing $95 and one Canadian dollar bill, serial number 3047913. *Supra* at 716, 211 N.W.2d at 639.

The supreme court concluded:

The trial court did grant the motion to suppress the evidence of the second gun seized from under the seat and the paper bag and its contents upon the ground that, although the officers had probable cause to search, there was no necessity to do so without a search warrant. We disagree. This search without a warrant can be justified upon two grounds. First, it was a search incident to a valid arrest for the fruits of the crime for which the defendants were arrested. This was not just a random search that turned up evidence unknown to exist by the searching officers.

Second, it was a valid search based upon probable cause. The robbery had taken place no longer than ten minutes before the search. It was probable the stolen money was on the persons arrested or in the car they were using to flee from the scene of the robbery. Under these facts, to require that an officer remain with the car (this is at 12:45 a.m.) until a search warrant could be obtained, or otherwise impound the car and then obtain a search warrant, appears to be an illogical and unnecessary imposition of form over substance. The search of the vehicle in this case was based upon facts known to the officer which would lead any reasonable police officer to believe that it was not only probable, but highly probable, that the fruits of the crime were near at hand. The search described above was reasonable police

activity—not an unreasonable search nor deprivation of privacy as prohibited by both the federal and state constitutions. *Supra* at 717–18, 211 N.W.2d at 640.

We believe the evidence in this case patently and overwhelmingly established probable cause to search.[13]

Did the state meet its burden to produce evidence of exigent circumstances justifying a warrantless search?

At the outset, we address ourselves to the need to establish exigent circumstances as an essential requisite of a warrantless search. We read the opinions of the United States Supreme Court as clearly and repeatedly asserting the need for such proof. Assertions by members of the Bar and appellate courts in other states that proof of exigent circumstances is unnecessary in warrantless automobile searches, we believe to be erroneous.

Automobiles stopped on the public highway, because of their mobility and the reduced expectation of privacy inherent in their regulation and use, require a reduced quantum of exigency.[14] Our supreme court has characterized that quantum as "slight,"[15] but, like the United States Supreme Court,[16] has not abrogated the need for such circumstances. We view the confusion about the need for such an exigency as stemming from the infinite variety of circumstances presented by an officer's decision to stop and search an automobile without a warrant.

The United States Supreme Court has cautioned that the fact that a warrantless search involves an automobile is *not* talismanic.[17] Nonetheless, a speeding automobile

---

[13] The trial court grounded its decision upon the absence of exigent circumstances, and made no reference to an absence of probable cause to search.

[14] *United States v. Chadwick*, 433 U.S. at 12.

[15] *Thompson v. State*, 83 Wis.2d 142, 265 N.W.2d at 471.

[16] *Coolidge v. New Hampshire*, 403 U.S. at 455.

[17] *Id.* at 461.

leaving the scene of a crime, stopped on the public highway and accompanied by probable cause to search, may, for mobility reasons alone, provide the exigency that justifies a warrantless search. Perhaps an opposite extreme is found in an automobile parked upon private property and unoccupied by its arrested owner. Although equally mobile, it affords insufficient exigency to justify a warrantless search.[18]

Although a warrantless automobile search has been described as an "exception" to the rule requiring a search warrant, such exception has not been relieved from the need for determining the reasonableness of the warrantless search in the context of probable cause to search *and* the proof of exigent circumstances justifying the failure to apply for judicial approval for the search.

In this case were there exigent circumstances? Resolution of that issue requires consideration of the evidence.

We have already referred to the importance of locating the burglarious tool as a "key" evidentiary link. Effective police investigation demanded a concerted effort to discover the key if the prosecutor was to be provided with evidence that would assure the quality of law enforcement that the state and community might reasonably expect. If the police failed to discover the key, the credibility of the surveilling officers' direct evidence might easily be questioned. If Donovan's motions and manipulations in proximity to the parking meters and the evidence of the absence of pry marks was true, why did not the police discover Donovan's key? Predictably, that would be the thrust of the cross-examination. If Donovan's *modus operandi* was to use a key, why was one not discovered? These questions, posed early enough, might well result in the exercise of prosecutorial discretion to refuse prosecution.

[18] *Id.* at 463.

Given the importance of the key, the urgency to search the automobile is apparent in the lack of success of the search of the area and Donovan's person. Were those searches unsuccessful because inadequately performed? After a search warrant was issued and the auto unsuccessfully searched for the key, would the police return to the area for a future search? What would protect against the loss of the evidence to a sharp-eyed passerby or accomplice? Would Donovan himself post bail and return to the area before the auto could be searched? Undoubtedly those questions haunted the mind of the police officer.

Only the deployment of a number of police officers to cordon the area would protect against loss of the evidence. The officer most likely to leave the area to testify at a search warrant evidentiary hearing would be the surveilling officer—the only person who could reasonably contribute to defining the area and shedding light on the area where, and means by which, Donovan ditched the key. Judicial retrospective mulling fails to effectively weigh exigencies unless considered in the perspective of the immediacy confronting the officer. We view the exigencies as substantial, not slight, and for that reason find the trial court's findings contrary to the great weight and clear preponderance of the evidence.

The inevitable and invariable refutory argument opposing any warrantless automobile search is made by Donovan. It is asserted that the police should have posted a guard at the automobile, or impounded it, and made application for a search warrant. That practice is cautious and leaves a sticky legal question to the judiciary. It is also simplistic. Just as the involvement of an automobile in a warrantless search is not a talismanic justification, so is the availability of a guard and a judge not

an automatic reinstatement of a search warrant requirement.

It has been suggested that a rural police officer might not be as easily spared for such guard duty as a metropolitan police officer.[19] Our immediate experience with metropolitan law enforcement suggests that the inherent hazard from such inefficient deployment of police personnel is infinitely greater to the metropolitan than the rural resident.

In determining the reasonableness of the warrantless search, we are to weigh the state's interest in law enforcement against the inherent values underpinning the fourth amendment.[20] That cannot be properly accomplished if out-of-hand we reject consideration of the opportunity to guard the automobile and apply for a search warrant. Nonetheless, those opportunities are not conclusive of the propriety of the warrantless automobile search. Those circumstances are to be weighed against the evident exigent circumstances. The important point to be made is that the opportunity to guard and apply for a warrant will be outweighed by exigent circumstances that are "slight."

We have performed that weighing function with the conclusion that the exigent circumstances in this case are not "slight," but substantial. We reverse the trial court's order suppressing as evidence the key obtained from the Donovan-occupied automobile.

*By the Court.*—Order reversed; remanded to the circuit court for further proceedings consistent with this opinion.

MOSER, J. (dissenting). Warrantless searches of automobiles can be reasonably made if probable cause ex-

---

[19] *Cady v. Dombrowski*, 413 U.S. at 447.

[20] *Coolidge v. New Hampshire*, 403 U.S. at 481.

ists that the automobile is an instrumentality of a crime or contains contraband, and if exigent circumstances exist. In this case I have no problem with the probable cause feature of the warrantless search.[1] I take particular note that, due to their mobility and the reduced expectation of privacy inherent in their regulation and use, when automobiles are stopped on the street, a reduced[2] or slight quantum of exigency is required.[3]

Nowhere in any of the decisions cited by the majority is there a case determining that exigent circumstances are so reduced or slight as to allow the warrantless dismantling of an automobile, or its parts, on the street. The majority opinion completely destroys the exigent circumstances requirement and leaves police authorities only the remaining probable cause requirement to meet the test of reasonableness of a warrantless search.

Donovan was arrested in his automobile on July 15, 1978, at about 9:30 p.m. at parking meter number 2462. I take judicial notice of the following facts:[4] parking meter number 2462 is in the city and county of Milwaukee, Wisconsin, and is no more than three normal city blocks from the Milwaukee county courthouse; that same parking meter is no more than six normal city blocks from District No. 1 City of Milwaukee Police Station and that station has indoor garage facilities.

The majority here finds exigent circumstances, not from the facts presented to the trial court, but from musings and opinings that due to the mobility of the automobile it might disappear and the evidence of the key be lost forever because of some sharp-eyed passerby or

---

[1] *Carroll v. United States*, 267 U.S. 132, 156 (1925); *Johnson v. United States*, 333 U.S. 10, 13–14 (1948).

[2] *United States v. Chadwick*, 433 U.S. 1, 12 (1977).

[3] *Thompson v. State*, 83 Wis.2d 134, 142, 265 N.W.2d 467, 471 (1978).

[4] Sec. 902.01(2) and (3), Stats.

an accomplice, or that Donovan himself, who was under arrest, would post bail and get to the automobile before a search warrant was obtained. They further opined that a cordon of police would be needed to protect the key evidence within the automobile while a search warrant was obtained.

They further inveigh against a search warrant because it is a sticky and cautious method of proceeding. It should be because warrantless searches and seizures are per se unreasonable.[5]

All that the officers had to do was to impound the vehicle, tow it to the police garage six blocks away, get a judge to issue a search warrant for the vehicle, and the "key" in question would have been available for evidence at the time of the charge for possession of burglarious tools.

For these reasons I would affirm the trial court's ruling suppressing the "key" evidence.

---

[5] *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971).