COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP999-CR**

Cir. Ct. No. **2018CM1973**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DAVONTA J. DILLARD,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: HANNAH C. DUGAN, Judge. *Affirmed.*

¶1 WHITE, J.[1] Davonta J. Dillard appeals his judgment of conviction for carrying a concealed weapon. The circuit court denied Dillard's motion to suppress the weapon discovered in a search during an investigatory stop. The

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

circuit court concluded that the police had exigent circumstances to perform a warrantless search of the vehicle; therefore, the search was reasonable. We agree and accordingly, we affirm.

## BACKGROUND

¶2     Dillard was arrested in May 2018 for being "armed with a concealed and dangerous weapon, a Ruger .40 caliber handgun, contrary to [WIS. STAT. §§] 941.23(2), 939.51(3)(a)." Dillard moved to suppress. At the suppression hearing, the State presented testimony from a Milwaukee Police Department officer. The officer testified that he was on bicycle patrol with five other officers around 10:00 p.m. on May 24, 2018, traveling eastbound on West Center Street, when he observed a "silver Infiniti four-door, which looked to be running." The officer, who approached facing the front of the vehicle, could see "no occupants in the vehicle." He explained it was a City of Milwaukee ordinance violation to leave a vehicle running and unoccupied. Further, the officer noted that the vehicle had "illegal tints on the front passenger [side window], rear passenger [side window], back windshield, and rear driver [side window], but the front [driver side] window had no tint."[2] He also noted that the vehicle was parked in "the highest crime area in the City of Milwaukee," in an "area where burglaries, drug, and gun crimes are very prevalent."

¶3     The officer testified that when he approached the vehicle, he "illuminated [his] flashlight to get a better look." He identified a person in the

---

[2] The officer testified that he was tintmeter trained; the vehicle's back windshield, rear driver side, and passenger side windows were very dark and later testing showed they were only allowing 5% of the light to pass through the windows. The vehicle's windshield and front driver side window were not illegally tinted.

back seat, who looked up, saw the officer, and immediately ducked "down on the backseat … in attempts to conceal himself." The officer could no longer see the person due to dark tint on the rear and side windows of the vehicle.

¶4 The officer testified that he then opened the rear passenger side door. The officer explained that he opened the door because it was an "extreme safety hazard" for an officer in full uniform to illuminate a flashlight inside the vehicle, see a subject inside who very quickly laid down, and then the officer cannot see the person through the tinted windows. The officer considered that the person in the vehicle was hiding himself, he might be arming himself "because he saw an officer with a flashlight" and there are "only so many reasons you hide yourself from officers in a vehicle." The officer explained that safety was a first concern when conducting a traffic stop because "they're the most danger[ous] part of an officer's duties."

¶5 The officer testified that when he opened the door, he observed Dillard "reaching towards the floor area … behind the driver's seat. He then immediately sat up and attempted to exit the vehicle on the opposite side." When Dillard exited the vehicle on the passenger side, he was met by multiple officers and he was taken into custody while attempting to flee. The State played the officer's body camera video footage at the hearing and moved to admit fifty-one seconds of footage, which covered the entire encounter.

¶6 On cross-examination, the officer testified that he did not recall whether he attempted to communicate with Dillard inside the vehicle prior to opening the door. The officer did not ask Dillard to step out of the vehicle prior to opening the door. The officer was unsure what he said to Dillard as he opened the door, but thought he may have said, "show me your hands."

¶7 In closing arguments to the circuit court, defense counsel stated that "[b]ased off the testimony here, the [d]efense would like to withdraw" its argument that there was no reasonable suspicion for the police to investigate the running vehicle that Dillard was inside because counsel "believe[d] that there is reasonable suspicion for the officers to approach the vehicle." Defense counsel renewed its argument that the police lacked probable cause for the search.

¶8 In briefing to the court after the suppression hearing, the State conceded that opening the vehicle door was a sufficient intrusion to be considered a search under the Fourth Amendment. The State argued that the officer's warrantless search was justified by exigent circumstances, specifically that the officer reasonably believed that Dillard posed a threat to officer safety and that he would flee if the police did not take quick action. The State asserted that the delay to seek a warrant would have gravely endangered officer and public safety.

¶9 The circuit court denied Dillard's motion to suppress. The circuit court reviewed the facts that "the officers stated they had a reasonable concern for safety." Because of Dillard's "actions, his attempt to conceal [himself] and exit the vehicle, the unknown-ness, the high-crime area, the time of night, the high-tinted windows," the officers had "reason for concern." It also concluded the officer had reason to investigate "because of the running car."

¶10 The circuit court concluded that based on the totality of the circumstances, the police had reasonable suspicion and probable cause. It concluded that it was reasonable "for the officer to open the door and further his investigation at that point, for his own safety and those of the other officers who were present as well[.]" The court concluded that the exigent circumstances

justified a warrantless search and accordingly, denied Dillard's motion to suppress.

¶11   The case proceeded to a jury trial in February 2019.  The jury returned a verdict of guilty on the charge in the complaint that Dillard was carrying a concealed weapon.  The circuit court entered a judgment of conviction.  In May 2019, the circuit court sentenced Dillard to twelve months of probation, withheld a sentence, and required Dillard to perform twenty hours of community service.

¶12   Dillard appeals.

## DISCUSSION

¶13   Dillard argues that the circuit court erred when it denied his motion to suppress because it was based on clearly erroneous factual findings and legal conclusions.  Because we conclude that this issue can be narrowly decided on whether it was reasonable for the police to conduct a warrantless search due to exigent circumstances, we decline to address Dillard's other arguments in detail.[3]

---

[3] Dillard additionally argues that the circuit court misstated the city ordinance on running unoccupied vehicles.  The circuit court stated that the silver Infiniti "was running with nobody in the driver's seat, which is a violation of the traffic code."  Dillard points out that the ordinance merely requires a vehicle to be attended while the key is in the ignition, and here, it was attended by Dillard in the backseat.  The circuit court's statement of the law is not dispositive to our review.  We may affirm the circuit court's decision on different grounds or reasoning.  *See* *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995).

(continued)

*Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶40, 303 Wis. 2d 514, 735 N.W.2d 477 (holding that reviewing courts decide cases on the narrowest possible grounds). We note that the State conceded that opening the door constituted a warrantless search under the Fourth Amendment and it does not dispute that issue on appeal. Our analysis of the suppression motion proceeds from this view.

¶14 A motion to suppress evidence presents a question of constitutional fact. *State v. Smith*, 2018 WI 2, ¶9, 379 Wis. 2d 86, 905 N.W.2d 353. We employ a two part standard of review. The circuit court's findings of historical fact are reviewed under the clearly erroneous standard. *State v. Floyd*, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560. "[T]he circuit court's application of the historical facts to constitutional principles is a question of law we review independently." *Id.*

¶15 The state and federal constitutions protect against unreasonable searches and seizures. U.S. CONST. art. IV; WIS. CONST. art. I, § 11. Warrantless searches are *per se* unreasonable. *State v. Donovan*, 91 Wis. 2d 401, 407, 283 N.W.2d 431 (Ct. App. 1979). "[A]n exception to the Fourth Amendment warrant requirement is the existence of exigent circumstances." *State v. Ayala*, 2011 WI App 6, ¶16, 331 Wis. 2d 171, 793 N.W.2d 511. The law recognizes four

---

Second, Dillard argues that the circuit court erred when it concluded that the police had reasonable suspicion to investigate the vehicle that Dillard was sitting inside. We note that Dillard conceded that the police had reasonable suspicion to investigate the Infiniti after hearing the officer's testimony at the suppression hearing. On appeal, Dillard argues that reasonable suspicion did not exist, but then argues that because the State conceded opening the vehicle door was a search, we must analyze whether probable cause existed. The record reflects that the officer articulated particularized suspicion why the patrol approached the silver Infiniti—observing through the windshield that there were no occupants in a running vehicle and that the passenger side windows and driver side rear windows were illegally tinted very darkly. Therefore, we agree with the circuit court, the State and defense counsel that there was reasonable suspicion to support the stop.

categories of exigent circumstances that "authorize a law enforcement officer's warrantless" intrusion: (1) "hot pursuit of a suspect"; (2) "a threat to the safety of a suspect or others"; (3) a risk that evidence will be destroyed"; and (4) "a likelihood that the suspect will flee." *State v. Richter*, 2000 WI 58, ¶29, 235 Wis. 2d 524, 612 N.W.2d 29. Our examination "of whether exigent circumstances exist is to be 'directed by a flexible test of reasonableness under the totality of the circumstances.'" *Ayala*, 331 Wis. 2d 171, ¶17 (citation omitted). "The State bears the burden of proving the existence of exigent circumstances." *Richter*, 235 Wis. 2d 524, ¶29.

¶16 The State argues that the circuit court properly denied the suppression motion because exigent circumstances made it reasonable for the officer to open the vehicle door. The State argues the officer's warrantless search was reasonable. We examine the totality of the circumstances to objectively assess the reasonableness of an officer's actions when exigent circumstances are alleged. *See id.*, ¶30. "The test is '[w]hether a police officer under the circumstances known to the officer at the time … reasonably believes that delay in procuring a warrant would gravely endanger life or risk destruction of evidence or greatly enhance the likelihood of the suspect's escape.'" *Id.* (citation omitted). "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-99 (1967).

¶17 Our review begins with the officer's reason for opening the vehicle door: threat to his own safety and that of his fellow officers. We determine the reasonableness of the warrantless search in the totality of circumstances. The facts show that the officer was on bicycle patrol in the highest crime area in Milwaukee when he approached a running vehicle at around 10:00 p.m. Seeing no person in

the front seat through the windshield, the officer illuminated his flashlight into the vehicle, which had very dark, tinted rear windows. The officer saw a person in the back seat and then saw that person duck down out of sight. Within seconds of approaching the vehicle, the officer opens the rear driver side door to make contact with the person who was otherwise hidden by the dark tinted windows. In the totality of circumstances, it is clear that the officer acted reasonably in furtherance of protecting himself and the safety of his fellow officers, which then constitutes an exigent circumstance and an exception to the prohibition on warrantless searches. The officer testified about his safety concerns and under the objective test, it would be unreasonable to ask the officer in this situation to delay making contact with an individual hidden inside a dark vehicle.

¶18 Dillard argues that there were logical and innocent explanations for his actions in the vehicle. However, the police are not required to rule out potential innocent explanations before conducting an investigatory stop. *See State v. Limon*, 2008 WI App 77, ¶23, 312 Wis. 2d 174, 751 N.W.2d 877. Police officers logically work from incomplete information during an investigation. *See Richter*, 235 Wis. 2d 524, ¶40. When considering threats to physical safety as an exigent circumstance, it would be overly simplistic to require the police "to have affirmative evidence of the presence of firearms or known violent tendencies on the part of the suspect before acting to protect the safety of others" and it would unreasonably hinder the officer's performance of a core responsibility. *Id.* Therefore, we conclude that the officer's actions were reasonable under the Fourth Amendment because exigent circumstances existed, here, a threat to the safety of the officer and the other officers on patrol.

¶19 Next, Dillard argues that the police cannot benefit from an exigent circumstance of their own creation. When police conduct, including unannounced

warrantless entry, creates potential danger, then "the exigent circumstances resulting from that conduct cannot justify the warrantless entry." ***State v. Kiekhefer***, 212 Wis. 2d 460, 477-78, 569 N.W.2d 316 (Ct. App. 1997). Dillard argues that the police created their fear of potential danger when the patrol did not withdraw from the investigatory stop after seeing Dillard and realizing that the silver Infiniti was not in violation of the city ordinance on unattended vehicles. This argument fails. The police did not create the exigent circumstances. The parties agreed at the suppression hearing that the police had reasonable suspicion to investigate a running vehicle that appeared unattended. However, while initiating the investigatory stop, the officer saw Dillard notice the police and duck down in the backseat. Dillard's movement spurred the officer's concern for his safety and that of his fellow officers. It would be unreasonable to ask the police to then ignore the vehicle because it was attended.[4]

¶20 Dillard contends that opening the car door along with the immediate detention, tasing, and arrest of Dillard—within fifty-one seconds of the police seeing the vehicle—was not indicative of an investigatory stop but instead search and arrest. We reject this characterization of the facts. While the officer opened the rear driver side door, which the State concedes was a search, it was Dillard who opened the rear passenger side door, ran into and past several police officers, and made it approximately ten feet before the police employed a taser and detained him. The police arrested Dillard for the weapon found in the back of the vehicle behind the driver's seat on the floor in plain sight—in the same area of the

---

[4] An investigatory stop remains lawful while police conduct ordinary inquiries and becomes unreasonable if the duration of the stop is measurably extended by unrelated inquiries. *See **Rodriguez v. United States***, 575 U.S. 348, 355 (2015). Here, having initiated the stop, it was not unreasonable for the police to want to make contact with the occupant in the vehicle.

vehicle where the officer first saw Dillard when the officer opened the door. Our inquiry focuses on the warrantless search—i.e. opening the vehicle door, not the later search of the vehicle, or the later arrest of Dillard.

¶21     Dillard asserts that the police lacked probable cause to conduct the warrantless search. "Probable cause is a fluid concept, assuming different requirements depending upon its context." *County of Jefferson v. Renz*, 231 Wis. 2d 293, 304, 603 N.W.2d 541 (1999). During a lawful investigation, officers "may conduct a warrantless search or seizure when 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kirby*, 2014 WI App 74, ¶17, 355 Wis. 2d 423, 851 N.W.2d 796 (citation omitted). Here, the police had reasonable suspicion to investigate the silver Infiniti. When the officer observed that Dillard noticed the police presence and then ducked to the floor, it was reasonable for the officer to infer Dillard was trying to hide from the police. When faced with an unknown person hiding inside a vehicle with darkly tinted windows, we conclude it was reasonable for the officer to intrude by opening the vehicle door.

¶22     Dillard argues that the discovery of the handgun on the vehicle floor cannot be considered a reasonable search and seizure because it was in plain view of the officers. This argument fails. "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *Horton v. California*, 496 U.S. 128, 135 (1990). We acknowledge that the handgun was not in plain view prior to the warrantless search, i.e. opening the car door. However, the warrantless search was not conducted to look for weapons or contraband. The officer opened the door to make contact with Dillard, whom the officer saw duck down inside the vehicle. Because the warrantless

search was reasonable due to exigent circumstances of threats to officer safety, we conclude that the gun was legally seized.

## CONCLUSION

¶23    We conclude that under the totality of circumstances, the officer's warrantless search was reasonable and constituted exigent circumstances as an exception to the Fourth Amendment warrant requirements. Therefore, the circuit court did not err when it denied Dillard's suppression motion. Accordingly, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.