STATE, Respondent, vs. LEADBETTER and others, Appellants.

*December 9, 1932—January 10, 1933.*

328

For the appellants there were briefs by *O'Melia & Kaye* of Rhinelander, and oral argument by *A. J. O'Melia.*

For the respondent there was a brief by *Earl L. Kennedy,* district attorney of Oneida county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Kennedy.*

NELSON, J. There is no question as to the guilt of the defendants if certain incriminating evidence adduced upon the trial was properly received after defendants' timely motion to suppress it. The defendants earnestly contend here, as they did in the courts below, that the evidence of which complaint is made was obtained by means of an unlawful search by conservation wardens, without a warrant, and in violation of their rights guaranteed them by the Fourth amendment to the constitution of the United States and by art. I, sec. 11, of the constitution of the state of Wisconsin.

Upon the trial in the county court motion was made to suppress the evidence which was procured by searching the

automobile in which defendants were riding. After full hearing, in the absence of the jury, the motion was denied. The county court held that although the search was without reasonable or probable cause it was nevertheless lawful because consented to by defendants. Upon appeal to the circuit court it was held that the search was lawful because made both upon reasonable and probable cause and with the consent of the defendants.

In the view we take we need only determine whether the conservation wardens acted upon reasonable or probable cause justifying their belief that the automobile in which the defendants were riding contained contraband offending against the fish and game laws of this state.

The law is now settled that there is "a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought" (*Carroll v. United States,* 267 U. S. 132, 45 Sup. Ct. 280) ; that an automobile may be searched by a competent official if there is reasonable or probable cause for a belief reasonably arising out of the circumstances known to the seizing officer or of which he is credibly informed, that the automobile contains contraband or articles offending against the law. *Carroll v. United States, supra; Wilder v. Miller,* 190 Wis. 136, 208 N. W. 865; *Halbach v. State,* 200 Wis. 145, 227 N. W. 306. In the *Carroll Case* the true rule was stated thus :

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."

The State Conservation Commission and its deputies are given rather broad police powers in the enforcement of the fish and game laws of this state. Sec. 29.05. Any such officer is specifically authorized without warrant "to enter and examine all . . . automobiles or other vehicles . . . where he has reason to believe that wild animals, taken or held in violation of this chapter (29), are to be found." Sec. 29.05 (6).

We have no doubt that within the field of the fish and game laws a deputy conservation warden has authority to search an automobile without a warrant if there exists, at the time of the search, reasonable or probable cause for his belief that the contents of the automobile searched offend against some law which it is his duty to enforce.

The only question for decision, therefore, is whether the wardens, under the facts and circumstances hereinafter related, had reasonable or probable cause for believing that contraband (in this case illegally caught trout) was being transported in the automobile in which defendants were riding. This necessitates a careful review of the evidence which the state asserts gave rise to reasonable or probable cause justifying the search.

At about eight o'clock in the forenoon of January 7, 1932, Lee Perry, a conservation warden of the state of Wisconsin, left Rhinelander in his automobile proceeding along state highway 47. Shortly thereafter he picked up Rappley, another conservation warden, and the two proceeded to patrol the highways looking for evidence of freshly made tracks in the fresh snow which might lead to the discovery of fish and game law violations. As they drove along highway 47 they came to the place where the "Lake Mildred road" runs off to the side. The wardens turned into that road for a short distance to ascertain if there were any tracks along it. Finding none they returned to highway 47 and proceeded on

their way. Later in the day at about three o'clock they returned to the "Lake Mildred road" and again turned into it, proceeding as far as they had gone earlier in the day. Upon reaching the point where their car had been turned around in the morning they discovered tracks which indicated that an automobile had gone in along that road but had not come out. They thereupon followed the tracks for a distance of some two or three miles when they observed that the automobile which had made the tracks had turned off of the "Lake Mildred road" and into an old road or trail, and was stopped a short distance away. Rappley went over to the automobile and found that it was mired and that two of the defendants were engaged in attempting to extricate it. Rappley pretended to be looking for a fictitiously named person. He saw nothing of a suspicious nature at that time. Rappley, however, knew that a few rods away from the stalled car was a trout stream which emptied into what is described in the evidence as a "beaver pond" and that both such stream and pond contained trout. Rappley went back and met Perry and walked with him up a hill, which gave them an opportunity to observe the stalled car and the men walking around it. Some time thereafter three men were observed to be in the vicinity of the car. Rappley then went down toward the trout stream for the purpose of making closer observations. While down there he saw defendant Wood come off the pond and go to the car. He clearly observed that Wood was carrying an ice chisel on his shoulder. This ice chisel was described as being about four feet long. Rappley shortly thereafter went back to Perry and reported what he had seen. They then noticed that four men were working about the car and that it was soon successfully extricated. The four men then were seen to go back over the hill in the direction of the beaver pond. Both wardens thereafter went down toward the stream in the

same direction that Rappley had gone before. The two wardens heard voices coming from the direction of the pond but could not distinguish what was being said or what was being done. After lapse of a few minutes the wardens went to their car and drove back some distance along the "Lake Mildred road." The car was turned around and driven to a point where it was shielded from view by a turn in the road. They then waited for about an hour and a half, or until 5:30 or 6 o'clock, when the defendants came out. It was then quite dark. As the defendants' car approached close to the warden's car Perry turned on the lights of his automobile and he and Rappley immediately went to the defendants' car. Perry opened the right-hand front door of defendants' car and had some conversation with defendant Leadbetter which was the basis of the state's assertion that the defendants consented to the search. We shall not devote any time to a review of the evidence relating to the consent to search. Search of the car revealed two freshly caught trout and certain fishing equipment.

The question therefore is, Did the wardens, as prudent men, have reasonable and probable cause for believing that the occupants of that car, under all of the facts and circumstances, had been violating the fish and game laws and that the car contained contraband?

We have no difficulty in reaching the conclusion that the wardens had such cause for making the search and that the search was therefore lawful. January 7th was in the dead of winter. The wardens knew that the "Lake Mildred road" was little used in the winter time. They followed the tracks of a car which went in but did not come out. They found the car stopped near a beaver pond which at least one of the wardens knew contained trout. As wardens they undoubtedly knew that the depth of the pond was greater than that of the running stream and that in the winter time

trout inhabit ponds. Rappley saw defendant Wood proceeding from the pond with an "ice chisel" on his shoulder which permitted the very reasonable conclusion under the circumstances that it had been used for the purpose for which it was obviously constructed, that is to say, cutting a hole or holes in ice. They observed four men extricate the automobile from the hole in which it had been stuck and then go back toward the pond. They heard voices coming from the direction of the pond. There was nothing in what the wardens observed to indicate that the defendants were engaged in running lines, looking over lands, or doing any other innocent thing. It was quite evident to the wardens that the defendants were doing something upon the beaver pond and that whatever was being done had required the use of an ice chisel. After the car was extricated the defendants did not come out for an hour and a half and until it was quite dark. Remaining so long in the locality of the beaver pond at that time of year and at that time of day might well seem to the wardens to be inconsistent with any innocent pursuit.

Since all that is required to justify a search of an automobile is reasonable or probable cause for believing that its contents offend against the law, we conclude that the search was lawful. Positive evidence that the automobile contained contraband was not required in order to justify its search. We think that the wardens, under all of the facts and circumstances, had within their knowledge sufficient information to justify men of reasonable caution in believing that defendants' automobile contained contraband.

*By the Court.*—Judgment affirmed.