# STATE of Wisconsin, Plaintiff-Respondent,

## v.

# Henry L. TOMPKINS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 86–0095–CR. Argued October 7, 1987.—Decided May 25, 1988.*

(Also reported in 423 N.W.2d 823.)

For the defendant-appellant-petitioner there were briefs by *James A. Walrath,* and *Shellow, Shellow &*

*Glynn, S.C.,* Milwaukee and oral argument by *James A. Walrath.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

STEINMETZ, J.   This is an automobile search case taken upon a review of an unpublished decision of the court of appeals which affirmed Tompkins' conviction for possession of cocaine with the intent to deliver, entered by the circuit court for Fond du Lac county, Honorable Eugene F. McEssey, judge.

We find that under the facts, as a matter of law, there was probable cause to search the defendant's motor vehicle. We further hold that because the agents had probable cause to believe the automobile contained contraband, there was no need for a showing of exigent circumstances or a search warrant.

The defendant in this case is Henry L. Tompkins (Tompkins). He was charged with possession of cocaine with intent to deliver contrary to sec. 161.41(1m)(b), Stats. Tompkins filed a motion to suppress challenging the seizure of cocaine from the interior of a truck which he had driven on March 14, 1984. He also sought suppression of items seized from his wallet which agents took from him following his arrest. The trial court denied all of defendant's motions to suppress.

The defendant pleaded guilty and was sentenced to a term of five years in the Wisconsin State Prison. However, because the evidence supporting Tompkins' conviction was the subject of a motion to suppress, he appealed the suppression ruling and the subsequent judgment of conviction under sec. 971.31(10), Stats.

*See State v. Mordeszewski,* 68 Wis. 2d 649, 651, 229 N.W.2d 642 (1975).

The testimony at the suppression hearing showed that state agent John Mendoza (Mendoza) originally planned to purchase one-half pound of cocaine from David Lyons (Lyons) at the Holiday Inn on the outskirts of Fond du Lac on March 14, 1984. At 3:20 p.m. on that date Lyons telephoned Mendoza and reported that he was having trouble making connections with his source. It was this information and later information that led Mendoza to believe that the cocaine was being delivered that same day to Lyons from an outside source, rather than coming from a supply already in Lyons' possession.

During this same time period, other state agents witnessed Lyons and co-defendant Cleve Meyer drive to several Fond du Lac locations near the Holiday Inn, including the Forest Plaza Shopping Center, Forest Mall Shopping Center and Egger's Tavern. After stopping at various places, apparently in an effort to locate his source, Lyons finally rendezvoused with Tompkins at a shopping mall parking lot. Lyons left the car in which he was a passenger and entered a pick-up truck driven by Tompkins. He remained in Tompkins' truck for several minutes, returned to the car in which he had been a passenger, and went to the Holiday Inn, where he had agreed to meet agent Mendoza to deliver the cocaine.

Upon delivery of one-quarter pound of cocaine, Mendoza arrested Lyons. Lyons explained that his source had told him that he would deliver only one-quarter pound of cocaine at a time. There is no dispute that, at the time of the transfer to Lyons, the undelivered one-quarter pound of cocaine was either on Tompkins' person or in Tompkins' truck and that ·

Lyons was told he could return for the balance after the delivery of the first quarter pound to his customer.

Upon the arrest of Lyons, the agents following Tompkins' pick-up truck were directed to arrest Tompkins. After Tompkins delivered the cocaine to Lyons in the mall parking lot, these agents saw Tompkins go to a gas station, where he went inside of the building for three or four minutes. He then drove to Egger's Tavern. After Tompkins was in the tavern for about 15 minutes, he was arrested. The agents patted down Tompkins in the bar and then asked him to step outside. He was handcuffed there and was read his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966).

This body search produced keys which fit the pick-up truck Tompkins had been driving. By this time there were five state agents at the scene in separate automobiles surrounding the driverless, parked and locked pick-up truck. The agents, using the key, made an immediate warrantless search of the pick-up truck and found a small box containing one-quarter pound of cocaine in plastic bags.

Tompkins moved to suppress the evidence produced by this search. The trial judge denied the motion because he concluded the search of the truck was incident to the arrest and, in any event, the cocaine inevitably would have been discovered by lawful means. The judge determined that irrespective of the legal theory supporting the search, there was probable cause for a search of the truck. However, the judge specifically found that a search warrant could have been obtained.

On appeal from the judgment of conviction, the court of appeals agreed there was probable cause to believe that the remaining one-quarter pound of

cocaine was in the truck. The court of appeals held that the search was conducted incident to the arrest of Tompkins, despite the fact the arrest and pat-down took place in Egger's Tavern. The conviction was affirmed.

The defendant argues in this court that the warrantless search was not a valid search incident to his arrest. He further argues there was no probable cause to believe the remaining one-quarter pound of cocaine was in the parked and locked truck. Finally, he asserts that, even were there probable cause for a search, there were no exigent circumstances that would permit an exception to the requirement of a search warrant. He points out that the trial judge made the specific finding that a warrant could have been obtained.

Our first inquiry is whether the search was conducted incident to a lawful arrest. If it was not, we must examine whether the agents had probable cause to believe the cocaine was located in Tompkins' truck. If they did not have probable cause to search, the inquiry ends, because the warrantless search was per se unreasonable under the Wisconsin Constitution and United States Constitution search and seizure provisions. If this court finds that the agents did have probable cause to search the truck, the issue becomes whether exigent circumstances are required to be present when the defendant is arrested outside of his vehicle and some distance from it.

■

The issues in this case regarding the existence of probable cause and the propriety of the search conducted present questions of law. Accordingly, this court independently reviews these issues without deference to the trial court or court of appeals.

*Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987).

■

Article I, sec. 11 of the Wisconsin Constitution prohibits unreasonable search and seizure.[1] Without probable cause neither a warrant nor warrantless search would be appropriate. Where a search is made incident to a lawful arrest, there need not be probable cause for the search. *See* sec. 968.11, Stats.; *State v. Fry,* 131 Wis. 2d 153, 388 N.W.2d 565 (1986).

■

Section 968.11, Stats., delineates the scope of a search made incident to a lawful arrest.[2] If the defendant had been arrested in the motor vehicle or, as in *Fry,* had he been stopped while driving and then arrested immediately thereafter just outside of his vehicle, there is no question that the search would

---

[1]Art. I, sec. 11 of the Wisconsin Constitution provides as follows:

> **"Searches and seizures. SECTION 11.** The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

[2]Sec. 968.11, Stats., provides as follows:

> **"Scope of search incident to lawful arrest.** When a lawful arrest is made, a law enforcement officer may reasonably search the person arrested and an area within such person's immediate presence for the purpose of:
> "(1) Protecting the officer from attack;
> "(2) Preventing the person from escaping;
> "(3) Discovering and seizing the fruits of the crime; or
> "(4) Discovering and seizing any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, the offense."

have been within the scope of a search incident to a lawful arrest. However, in this case Tompkins was arrested in the tavern some distance from his truck. Tompkins' truck was not "an area within [the defendant's] immediate presence" under sec. 968.11. We disagree with the court of appeals that the search was conducted "incident to" Tompkins' arrest within the meaning of sec. 968.11 and *Fry,* and we decline to sustain the search on these grounds.

Tompkins' second challenge regards the existence of probable cause to search the truck. While defendant in his brief denies that there was reason to believe he had the remaining one-quarter pound with him at the time of Lyons' initial purchase, in oral argument he conceded that there was evidence to a reasonable probability that he did then have the remaining cocaine with him. He asserts, however, that because following the delivery to Lyons, Tompkins stopped at a gas station for three or four minutes and then was in Egger's Tavern for about 15 minutes prior to his arrest, he could have secreted the cocaine at either of those locations and, hence, there was no probable cause to believe the cocaine remained in the truck. Defense counsel did concede that there was probable cause to believe that the cocaine was in one of those three locations. He argued, however, "that the agents conducting the search were required to have probable cause to believe that a controlled substance was at the *particular* location searched." (Emphasis supplied.)

■

We have no quarrel with this proposition; however, we do not believe that the concept of probable cause is so constrained as to mean "a particular location ... and not at any other location." While defense counsel would reduce the state's argument of

probable cause to an absurdity, stating "under the agents' theory they had probable cause to search the truck, the gas station, the tavern, and the area within a five-mile radius," we conclude that, under the facts here, there was probable cause to search the truck, the gas station and the tavern. There is no intimation in this record that the cocaine could have been left in any but the three named locations.

Professor Wayne LaFave discusses this situation in his treatise, LaFave, *Search and Seizure,* sec. 3.2(e) at 598–99 (2d ed. 1987):

> "[T]he problem arises ... when the police have probable cause that a particular identified person has committed a crime and that he consequently is likely to have evidence of that crime in his possession *somewhere,* but they lack any information which makes one location (e.g., his car) a more likely location than another (e.g. his apartment). [If under these circumstances] rulings permit searches to be made upon something less than a 50% probability as to any one particular place, they do not appear objectionable."

In *Texas v. Brown,* 460 U.S. 730, 742 (1983), the United States Supreme Court stated that "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a [person] of reasonable caution in the belief,'" that the contraband was likely to be in the place searched. The Court also stated in this case:

> "'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders

124

are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *Id.*

In *State v. Wisumierski,* 106 Wis. 2d 722, 739, 317 N.W.2d 484 (1982), we stated:

"In regard to probable cause, the supreme court has stated that '[the Court] deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, [must] act.'"

In *State v. Welsh,* 108 Wis. 2d 319, 329, 321 N.W.2d 245 (1982), we stated that probable cause was not susceptible of "stringently mechanical definitions." What is required is more than a possibility, but not a probability, that the conclusion is more likely than not. This court has always stressed the reasonableness factor. Is it reasonable to believe in the circumstances that particular evidence or contraband may be located at a place sought to be searched?

We hold that where there is evidence that would lead a reasonable person to conclude that the evidence sought is likely to be in a particular location—although there may be other evidence that could lead a reasonable person to conclude that the evidence may instead be in another location—there is probable cause for a search of the first location. The search of the first location is appropriate although there may also be probable cause to believe the evidence may be in the second or third location.

In this case the facts indicated that the cocaine was as likely to be in the place searched as it was to be in the two other places visited by the defendant. Accordingly, we reject the defendant's argument that there was not probable cause to search the truck. The state has successfully, by the recitation of the undisputed facts, fulfilled its duty to prove probable cause. We hold as a matter of law there was probable cause for the search.

The state contends that once probable cause is established—as we herein find it to be—the search of a motor vehicle may proceed without a warrant. It so asserts because under federal law of search and seizure the very nature of an automobile or truck, or other vehicle licensed to travel upon the highway, makes an automobile search *sui generis*. The state relies upon the mobility potential of a vehicle and the fact that licensed vehicles are constantly under police surveillance for criminal behavior and for safety purposes. In addition, the state relies upon the nature of the visual access to the interior of most motor vehicles by any passerby. These considerations result in a greatly reduced expectation of privacy justifying a search predicated on probable cause alone, without a showing that actual exigent circumstances existed. The state argues that, to the extent that exigent circumstances are necessary at all, the inherent mobility of an automobile satisfies this requirement. The state urges this court to interpret the Wisconsin search and seizure provision consistent with recent federal law interpreting the fourth amendment of the United States Constitution.

In *Carroll v. United States*, 267 U.S. 132 (1925), the United States Supreme Court first recognized what has been subsequently termed the "automobile

exception" to the prohibition against unreasonable search and seizure under the fourth amendment. The Court stated:

> "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens.
>
> " . . . .
>
> "Thus contemporaneously with the adoption of the Fourth Amendment we find in the first Congress, and in the following Second and Fourth Congresses, a difference made as to the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant.
>
> " . . . .
>
> "[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or

automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 149, 151, 153.

In the instant case, it is conceded that under the circumstances the officers could have obtained a search warrant. Does that fact make a difference today in the need to obtain a search warrant for an automobile when there exists probable cause to believe that the vehicle contains contraband? We believe not.

The underlying issue is whether the police acted reasonably in searching the vehicle, not whether a warrant could reasonably have been obtained. A perusal of the leading cases, *Chambers v. Maroney,* 399 U.S. 42 (1970); *Cady v. Dombrowski,* 413 U.S. 433 (1973); *Cardwell v. Lewis,* 417 U.S. 583 (1974); *Texas v. Brown,* 460 U.S. 730 (1983); and, finally, *California v. Carney,* 471 U.S. 386 (1985), indicate a steadily diminishing requirement over the years of proof of exigent circumstances based on the likelihood that the vehicle will be moved. These cases also indicate an increasing reliance by the Court upon the proposition that the right against unreasonable searches and seizures derives not so much from the need to protect property rights, but rather from the expectation of privacy. Privacy in one's home, office, or other place of business is contrasted with the visual opportunity that a vehicle offers to the police and to the public, who in general can peer into the windows of every passing vehicle. Under the holding in *Carney,* the diminished expectation of privacy in an automobile justifies permitting a warrantless search of a vehicle when there is probable cause to believe that the vehicle

128

contains a controlled substance, even absent a showing of exigent circumstances.

> "When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purpose—temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling." *Id.* at 392–93. (Footnote omitted.)

Thus, the present status of the federal automobile search and seizure law is well expressed by Professor LaFave as follows:

> "As the Supreme Court in recent years has come to emphasize more and more not merely the mobility factor but also the lesser expectation of privacy notion, this has been reflected in the manner in which lower courts now deal with vehicle searches. Most significant (and, absent any backing away from *Carney* by the Supreme Court, most likely in the future) is that courts uphold warrantless searches with virtually no inquiry into the facts of the particular case, reasoning that whether any kind of exigent circumstances claim could plausibly be put forward is totally irrelevant." 3 LaFave, *Search and Seizure,* sec. 7.2(b) at 39 (2d ed. 1987).

The Court of Appeals for the Seventh Circuit recently stated: "The automobile exception allows a warrantless search and seizure of a car so long as the search is justified by probable cause." *United States v.*

*Rivera,* 825 F.2d 152, 158 (7th Cir. 1987), *citing California v. Carney,* 471 U.S. 386; *Chambers v. Moraney,* 399 U.S. 42; *Carroll v. United States,* 267 U.S. 132. The exception as applied by the federal courts recognizes both the inherently mobile nature of an automobile and the decreased expectation of privacy that an individual has in a car. *See also Rakas v. Illinois,* 439 U.S. 128, 153–54 (1978) (Powell, J. concurring) ("Nothing is better established in Fourth Amendment jurisprudence than the distinction between one's expectation of privacy in an automobile and one's expectation when in other locations."); *United States v. Bagley,* 765 F.2d 836, 844 (9th Cir. 1985) (holding that probable cause alone justifies a warrantless search or seizure of a vehicle lawfully parked in a public place).

Federal law appears resolved that if the police have probable cause to believe a vehicle contains contraband, they may search it whether there are exigent circumstances or not. Accordingly, were we to follow the present state of federal law, the state, having proved probable cause to search the truck, could proceed with a warrantless search. We hold that where there is probable cause to believe that a vehicle contains evidence of a committed crime, Wisconsin constitutional law allows a warrantless search of a defendant's automobile without a showing of exigent circumstances.

Tompkins argues that art. I, sec. 11 of the Wisconsin Constitution requires that exigent circumstances be present before a warrantless search of an automobile can be made even though there is probable cause to believe the vehicle contains contraband. The defendant relies on statements this court made in dicta in *Wisumierski,* 106 Wis. 2d at 737–38:

"Even though we are not required to reach the issue of reasonableness of the search absent a finding of standing, we will comment briefly on this issue. Warrantless searches are per se unreasonable. ... There are but few exceptions to this basic tenet of constitutional law, and to come within one of them it must be shown, by the party seeking to fall within the exception, that the exigencies of the situation rendered a warrantless search imperative."

*Wisumierski,* applying federal constitutional law, stated that a "'very slight showing of exigency'" was required for a warrantless search of an automobile. *Id.* However, *Wisumierski* was decided two years before the United States Supreme Court decided *Carney* in 1984.

In *State v. Fry,* 131 Wis. 2d 153, 172, this court compared art. I, sec. 11 of the Wisconsin Constitution to the fourth amendment of the United States Constitution and concluded: "But for a few inconsequential differences in punctuation, capitalization and the use of the singular or plural form of a word, the texts of art. I, sec. 11 and the fourth amendment are identical."

As this court stated in *Fry,* we have consistently conformed the law of search and seizure under the Wisconsin Constitution to that developed by the United States Supreme Court under the federal constitution.[3] *Id.* at 172. The primary reason this court

---

[3]As this court stated in *Fry,* 131 Wis. 2d at 172–73:

"Numerous recent examples exist where this court has followed the precedent of the United States Supreme Court in search and seizure cases. In *State v. Rodgers,* 119 Wis. 2d 102, 349 N.W.2d 453 (1984), we followed the principles for determining the sufficiency of a consent to a search that were articulated by the

has declined to interpret art. I, sec. 11 of the state constitution differently than the federal interpretation of the fourth amendment is to prevent confusion which would be generated by differing standards. *Id.*

Although the United States Supreme Court sets the minimal constitutional standards applicable to the states through the fourteenth amendment, this court is free to interpret our constitution in a manner which affords greater protections. As we stated in *Fry:*

> "It is always conceivable that the Supreme Court could interpret the fourth amendment in a way that undermines the protection Wisconsin citizens have from unreasonable searches and seizures under art. I, sec. 11, Wisconsin Constitution. This would necessitate that we require greater protection to be afforded under the state constitution than is recognized under the fourth amendment." *Id.* at 174.

Moreover, when the respective provisions of the state and federal constitution differ in language such

Supreme Court in *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). In *State v. Boggess,* 115 Wis. 2d 443, 453–57, 340 N.W.2d 516 (1983), we adopted the totality of the circumstances test for determining probable cause enunciated by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213 (1983). In *State v. Callaway,* 106 Wis. 2d 503, 519–20, 317 N.W.2d 428 (1982), and *State v. Wisumierski,* 106 Wis. 2d 722, 727–28, 317 N.W.2d 484 (1982), we repudiated the doctrine of automatic standing for persons accused of possessary offenses, in accord with the Supreme Court's decision in *United States v. Salvucci,* 448 U.S. 83 (1980). Finally, in *State v. Fillyaw,* 104 Wis. 2d 700, 710–11, 312 N.W.2d 795 (1981), we abandoned the traditional rules for determining a defendant's standing to challenge an unconstitutional search, abandoning the 'legitimately on the premises' test in favor of an 'expectation of privacy' test, in conformity with the Supreme Court's decision in *Rakas v. Illinois,* 439 U.S. 128 (1978)."

that a federal constitutional provision offers more limited or restrictive protections than required under our state constitution, we are not influenced to the same degree to accept the federal position when interpreting rights claimed under the state constitution.

However, where the language of the state constitutional provision at issue is virtually identical with that of its federal counterpart, as here, we have traditionally interpreted our constitution consistent with the protections of the federal constitution as interpreted by the United States Supreme Court. This is particularly true of this court's interpretation of the Wisconsin search and seizure provision. In *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923), this court first recognized the exclusionary rule in Wisconsin.

In *Hoyer,* this court stated:

> "Sec. 11, art. I, Wis. Const., *supra,* is a pledge of the faith of the state government that the people of the state, all alike (with no express or possible mental reservation that it is for the good and innocent only), shall be *secure* in their persons, houses, papers, and effects against unreasonable search and seizure. This security has vanished and the pledge is violated by the state that guarantees it when officers of the state, acting under color of state-given authority, search and seize unlawfully. The pledge of this provision and that of sec. 8 are each violated when use is made of such evidence in one of its own courts by other of its officers." *Id.* at 417.

The protection of rights and the preservation of judicial integrity depend in reality on the deterrent effect of the exclusionary rule. Unlawful police conduct is deterred when evidence recovered in unreason-

able searches is not admissible in courts. The Wisconsin cases discussed in *Hoyer* and statements of that court all concerned judicial protection against police oppression. That is, the exclusionary rule developed as a judicial remedy to deter unreasonable searches and seizures. The fourth amendment was and is a limit on the powers of government.

However, although *Hoyer* was decided long before the United States Supreme Court held the provisions of the fourth amendment through the fourteenth amendment applicable to the states in *Mapp v. Ohio,* 367 U.S. 643 (1961), the Wisconsin Supreme Court accepted the United States Supreme Court's decisions and applied them to interpret Wisconsin Constitution art. I, sec. 11. In *Hoyer,* the court examined art. I, sec. 11 and the fourth amendment and stated: "The two constitutional provisions here invoked are quite closely interwoven ...." *Id.* at 416. The court stated:

> "For ourselves we elect to stand, as this court has heretofore stood, with the *federal* and other courts which consider these provisions of the Bill of Rights as embodied in constitutions to be of substance rather than mere tinsel. We hold, therefore, that the evidence challenged in this case was taken by the officers by unlawful search and seizure and contrary to sec. 11, art. I, Wis. Const., *supra,* and was improperly received in evidence against him on the trial in violation of his rights under sec. 8, art. I, Wis. Const." *Id.* at 415. (Emphasis added.)

Thus, the Wisconsin search and seizure provision was interpreted as consistent with the protections of the United States Constitution as interpreted by federal cases, *Amos v. United States,* 255 U.S. 313 (1921); *Gouled v. United States,* 255 U.S. 298 (1921);

*Burdeau v. McDowell,* 256 U.S. 465 (1921), and other court of appeals cases cited in *Hoyer.*

In *State v. Brady,* 130 Wis. 2d 443, 453, 388 N.W.2d 151 (1986) the court characterized *Hoyer* as the case "in which we adopted an exclusionary rule based upon the Wisconsin Constitution." What we did not state in *Brady* was that *Hoyer* was decided prior to *Mapp v. Ohio* and the fourth amendment had not been applied to the states. At that time of *Hoyer* the only protection against unreasonable searches was art. I, sec. 8 of the Wisconsin Constitution. Significantly, the interpretation of the Wisconsin Constitution in *Hoyer* was based exclusively upon federal cases, particularly United States Supreme Court decisions interpreting the fourth amendment.

As we indicated in *Fry,* this court will continue to construe our state constitutional search and seizure provision consistent with federal law interpreting the fourth amendment until and unless the federal protections offered undermine the rights protected under art. I, sec. 11. We have not yet reached that point where the United States Supreme Court's interpretation of the fourth amendment undermines the protection afforded individuals prosecuted in the Wisconsin criminal justice system from unreasonable searches and seizures. The requirement of probable cause for the officer to search an automobile for controlled substances is a strong deterrent to police invasion.

The dissent authored by Chief Justice Heffernan ignores the historical development of search and seizure law starting with *Hoyer* and its development consistent with United States Supreme Court decisions since *Mapp v. Ohio* held the fourth amendment applicable to the states through the fourteenth amendment. Exigent circumstances as a theory of law

135

was adopted in Wisconsin from federal case law stated in *Carroll.*

The cases cited by the dissent for the proposition that the exigent circumstances exception has been accepted into Wisconsin law are not in point for that statement. In *Wilder v. Miller,* 190 Wis. 136, 208 N.W. 865 (1926), this court examined the validity of a search and seizure of an abandoned automobile containing contraband. The issue of exigent circumstances was not examined or even discussed in *Wilder,* notwithstanding the fact that *Carroll* had just been decided the year before and given that the search was conducted in the clear absence of exigent circumstances. Nonetheless, the validity of the search and seizure was upheld in *Wilder* on probable cause alone. While, as the dissent points out, the *Wilder* court cited *Carroll* as authority for its decision, it is also true, as the dissent concedes, that the language of *Carroll* was "taken out of context" in *Wilder.* In *Wilder* this court distinguished *Hoyer* on its facts in the probable cause analysis, stating that in *Hoyer* the police did not detect the odor of alcohol emanating from the car prior to the search, whereas in *Wilder* the odor of alcohol was obvious. Thus, *Wilder* cannot be seen as a case in which "the exigent circumstances doctrine has been entrenched as a proper exception to the warrant requirement" under the Wisconsin Constitution. *See* dissent slip op. at 146–147.

In *State v. Leadbetter,* 210 Wis. 327, 246 N.W. 443 (1933), *Carroll* was accepted into Wisconsin constitutional law but again made no mention of exigent circumstances as being required for a warrantless search. Significantly, the dissent relies on *Leadbetter* for the history of exigent circumstances in Wisconsin despite the following language from that case: "Since

all that is required to justify a search of an automobile is reasonable or probable cause for believing that its contents offend against the law, we conclude that the search was lawful." *Id.* at 333.

*State v. Friday,* 140 Wis. 2d 701, 412 N.W.2d 540 (Ct. App. 1987) cited *Carroll* and *State v. Donovan,* 91 Wis. 2d 401, 408, 283 N.W.2d 431 (1979), stating that both probable cause and exigent circumstances are necessary for a warrantless search; however, the case was decided on the basis of the lack of probable cause and inappropriateness of the application of the inevitable discovery rule.

It is not logical in the absence of a constitutional violation to have one prosecuted in a federal court to have a warrantless search considered on the basis of probable cause and not requiring exigent circumstances; yet in a state court prosecution both probable cause and exigent circumstances are necessary for a warrantless search. This distinction is not necessary nor appropriate when the treatment is governed by almost identically phrased constitutional provisions.

The exclusionary rule continues to protect against unreasonable searches of an automobile; evidence obtained will not be admissible in prosecutions unless the officer had probable cause to believe the vehicle contained contraband or evidence of a committed crime. That is tested by whether the circumstances would warrant a person of reasonable caution to hold the same belief. *Texas v. Brown,* 460 U.S. at 742. The test on review of a motion to suppress will be whether the officer had probable cause to search the pick-up truck.

We hold that where the police have probable cause to believe that evidence of a crime is in an

automobile, a search may be made of the automobile without a search warrant and without a showing of exigent circumstances. In that regard, art. I, sec. 11 of the Wisconsin Constitution provides no greater rights than art. IV of the United States Constitution as interpreted by the United States Supreme Court.

*By the Court.*—The decision of the court of appeals is affirmed.

LOUIS J. CECI, J.   (concurring). I agree with the decision of the court, but write separately for the following reasons.

The present case involves one of the most deadly and devastating drugs affecting our society today— cocaine. The majority holds in this case that the warrantless search of the car was justified because the search of the vehicle by the police was made on probable cause. Accordingly, the cocaine evidence seized was found to have been admissible. With this decision I firmly agree.

In a recently reported case that bears striking resemblance to the present case, the United States Court of Appeals for the Seventh Circuit found a warrantless search and seizure of an automobile to be lawful where agents had observed a defendant retrieve what appeared to be narcotics from the vehicle's trunk and discovered that keys confiscated from that defendant matched those of the vehicle. *United States v. Rivera,* 825 F.2d 152 (7th Cir. 1987). The court in *Rivera* stated: "The automobile exception allows a warrantless search and seizure of a car so long as the search is justified by probable cause." 825 F.2d at 158. This decision embodies the recent decisions of the United States Supreme Court establishing a decreased expectation of privacy in automobiles. Interestingly,

one of the judges on the panel deciding *Rivera* was Senior Circuit Judge Thomas E. Fairchild, Sr., a distinguished and recognized scholar and former member of this court.

The dissent would have this court adhere to a requirement of "exigent circumstances" in searching automobiles, the same requirement for search of a dwelling if done without a warrant. The dissent tells us that "exigent circumstances" is a "bright line rule," meaning that it is easy to recognize and easy to apply. But such is not the case. That which constitutes "exigent circumstances" is frequently "in the eye of beholder," often requiring an on-the-scene judgment call by a police officer, often under stressful circumstances. Months later, in hindsight, it might not so appear to a judge far removed in time and place from the point of decision. "Exigent circumstances," far from being a "bright line," is often a difficult conclusion about which reasonable minds may differ. Such a requirement can result in the loss to the state of essential evidence even though probable cause existed to make such search.

The need to assure that law enforcement officials are not unnecessarily thwarted in obtaining admissible evidence is highlighted by the rising production of drugs and increase in drug trafficking which has been described as "a scourge that threatens to sap the energy and resources of nations ...." Gray, *Rising Drug Production Called Scourge of World,* Wis. State J., Apr. 10, 1988, at 1–D. The albatross of worldwide illicit drug production and trafficking has reached epidemic proportions: the costs of this drug situation are tremendous. One presidential candidate has described the severity of the problem as follows: "Our children are in trouble, the number one threat to

national security today is drugs." *Jackson Jabs at Bush, Pushes Political Unity,* Wis. State J., Mar. 25, 1988, at 1–3. To date, we are losing the war against drugs. *See, e.g., Reagan Gets Sour Drug News,* Wis. State J., Apr. 30, 1988, at 1–1. I submit that courts must, in response to the demands of public safety, fashion decisions which will assure that the war against drugs is not one which is fought by the state, with disabling handicaps imposed by overbroad constitutional interpretations.

In *Mapp v. Ohio,* 367 U.S. 643 (1961), the United States Supreme Court held that the exclusionary rule applied to the states through the fourteenth amendment as an essential means to assure the protection of the fourth amendment. As explained by the majority, while this court had previously, in *Hoyer v. State,* 180 Wis. 407, 415, 193 N.W. 89 (1923), recognized an exclusionary rule under our state constitution, that decision was supported by a foundation laid by federal law. We have steadfastly followed federal law in search and seizure cases both insofar as defining the scope of protected rights and in deterring the impingement of those rights by means of the enforcement of an exclusionary rule. As observed by this court in *State v. Fry,* 131 Wis. 2d 153, 175–76, 388 N.W.2d 565 (1986): "[C]onforming Wisconsin's search and seizure law to that developed by the Supreme Court under the fourth amendment is not only consistent with the text of Wisconsin's search and seizure provision, its constitutional history and its judicial history, but it is also in accord with sound public policy." We must not depart from federal case law which has, by requiring only probable cause to justify a warrantless search of a vehicle, reintroduced stability to the balance between

privacy rights and the need of law enforcement agents to procure evidence.

We explained the nature of the exclusionary rule in *Conrad v. State,* 63 Wis. 2d 616, 636, 218 N.W.2d 252 (1974), as follows: "The exclusionary rule is a judge-made one in furtherance of conduct that courts have considered to be in the public interest and to suppress conduct that is not." The public interest is furthered by the application of the exclusionary rule only where the police conduct sought to be deterred impinges upon a privacy interest, in violation of the fourth amendment. *See, e.g., State v. Brady,* 130 Wis. 2d 443, 453, 388 N.W.2d 151 (1986) (citing *United States v. Leon,* 468 U.S. 897, 910 (1984)). To extend the exclusionary rule to bar the admission of evidence obtained from a warrantless search of a vehicle where there exists probable cause for the search would not further "the public interest" because, as recognized by federal case law, an individual has a "decreased expectation of privacy" in a car. *Rivera,* 825 F.2d at 158 (citing *California v. Carney,* 471 U.S. 386 (1985)).

We should not let our acceptance of a more enlightened interpretation of the fourth amendment by the United States Supreme Court remain shackled by prior restrictive interpretations of search and seizure law by that Court. We would be remiss if we failed to seize the opportunity presented by federal case law to restore equilibrium between law enforcement and the judicial enforcement of constitutional rights. A majority of our people who are neither dependent on nor making a profit from this nefarious trade will welcome this small but hopefully significant addition to the arsenal of law enforcement in the war on drugs that the majority decision provides.

141

I am authorized to state that JUSTICE ROLAND B. DAY joins in this concurring opinion.

HEFFERNAN, CHIEF JUSTICE (dissenting). The majority concludes that, because the language of our constitution is similar to the United States Constitution, we are reduced to following the United States Supreme Court through every permutation it takes in its twisting and tortuous ratiocination of the application of the fourth amendment. Because I disagree with both this result and this methodology, I dissent.

In this case, Tompkins was thought to have drugs in his car. Under the circumstances of this case, the police had probable cause for that belief. However, I disagree that probable cause, alone, suffices to allow a warrantless search of a car. Under long standing Wisconsin constitutional doctrine, if the arresting state agents were faced with exigent circumstances, their warrantless search would be constitutionally acceptable. However, there is no question that the agents here were not faced with exigent circumstances, but nevertheless proceeded to their warrantless search. Under these circumstances, under accepted Wisconsin law, I would hold the search unreasonable and would reverse and remand for a new trial.

The defendant in this case is Henry L. Tompkins (Tompkins). Under the state's theory of the case, Tompkins was the supplier of cocaine to Lyons, a drug dealer, with whom state undercover agents made arrangements to purchase one-half pound of cocaine. On the day of the intended deal, Lyons informed Mendez, a state undercover agent, that he was having difficulty in making contact with his source, later identified as Tompkins. On the day of the intended

transfer, Lyons was under the constant surveillance of other state agents. After stopping at various places, apparently in an effort to locate his source, Lyons finally rendezvoused with Tompkins at a shopping mall parking lot. Lyons left the car in which he was a passenger and entered the pick-up truck driven by Tompkins. He remained in Tompkins' truck for several minutes, returned to the car in which he had been a passenger, and went to the Holiday Inn, where he had agreed to meet Mendez to deliver the cocaine.

Upon delivery of one-quarter pound of cocaine, Mendez arrested Lyons. Lyons had explained that his source had told him that he would deliver only a one-quarter pound of cocaine at a time and that Lyons should return for the balance. There is no dispute that, at the time of the transfer to Lyons, the undelivered one-quarter pound of cocaine was either on Tompkins' person or in Tompkins' truck and that Lyons was told that, after the delivery of the first quarter pound to his customer, he could return for the balance.

Upon the arrest of Lyons, the agents who had been following the Tompkins' pick-up truck were directed to arrest Tompkins. After the delivery of cocaine to Lyons in the mall parking lot, these agents saw Tompkins go to a gas station, where he went inside of the building for three or four minutes. He then drove to Egger's Tavern. After Tompkins was in the tavern for about fifteen minutes, he was placed under arrest. Tompkins was "patted down" in the bar and then was asked to step outside. He was there handcuffed and was read, his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

This body search produced keys which fit the pick-up truck Tompkins had been driving. By this

143

time there were five state agents at the scene in separate automobiles surrounding the driverless, parked, and locked pick-up truck. The agents, using the key, made an immediate search of the pick-up truck and found a small box, which contained one-quarter pound of cocaine in plastic bags.

Tompkins moved to suppress the evidence produced by this search. The circuit judge denied the motion, because, he concluded, the search of the truck was incident to the arrest and, in any event, the cocaine inevitably would have been discovered by lawful means. The circuit judge determined that, irrespective of the theory of the search, there was probable cause for a search of the truck.

The circuit judge found as a fact that there was ample time to obtain a warrant. Thus, the agents' next move ought to have been to obtain one. Instead, the agents entered the car and searched it, finding the incriminating evidence. The majority upholds this warrantless search and states that mere probable cause suffices to justify this result. The majority holds that there is no requirement for exigent circumstances in a probable cause, warrantless-search situation. This holding is contrary to the spirit and plain meaning of our constitution.

The Wisconsin Constitution states:

> "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause ...." Wis. Const. art. I, sec. 11.

"Effects" in this context is used in the sense of "movable property." Thus, there can be no argument that the Wisconsin Constitution was not intended to

144

apply to vehicle searches. Cars, houses, persons, and papers are all protected under our constitution.

This constitutional provision was not intended to prevent all searches. It was intended to prevent only "unreasonable" searches and seizures. Thus, the question is whether the search and the seizure here were "unreasonable." The issue of under what circumstances a warrantless search of a car is to be considered "unreasonable" has generated a whole line of jurisprudence—both under the Wisconsin Constitution and under the forth amendment provision of the United States Constitution. It is on this "reasonableness" ground that car searches may be distinguished from home, person, or paper searches.

The original case which examined this question, and which established the car-related, exigent-circumstances-exception doctrine under the United States Constitution, was *Carroll v. United States,* 267 U.S. 132 (1925). In that case, the Supreme Court held that, where a car was moving down an open highway and was subsequently waved down and stopped by prohibition agents who had probable cause to believe the car contained bootlegged alcohol, the subsequent warrantless search of the car was reasonable and, hence, permissible. The rationale advanced was that, under the circumstances—a moving car on an open highway—the officers could not have obtained a warrant before the car had passed. Thus, the Court held:

> "[T]he guaranty of freedom from unreasonable searches and seizures ... has been construed ... as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband

goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll,* 267 U.S. at 153.

The upshot of this reasoning was a holding that, under the exigent circumstances of a moving and movable car, probable cause would justify a warrantless automobile search. Thus, the exigent-circumstances rationale was an exception to the warrant requirement, carved out because the warrant requirement was fatally impracticable in the context of a search of an only-temporarily-stopped car. The reasoning of that case was that a car possessed special attributes which made "reasonableness" for car searches subject to a different test than that for house searches. This reasoning does not, however, eliminate constitutional protection for cars.

This court accepted the exigent-circumstances exception into Wisconsin law in many cases, among which are: *Wilder v. Miller,* 190 Wis. 136, 208 N.W. 865 (1926), in which this court accepted the reasoning of the *Carroll* Court as specifically applicable to art. I, sec. 11, of the Wisconsin Constitution—a matter especially notable in light of the fact that the analogous United States constitutional provision is never cited; *State v. Leadbetter,* 210 Wis. 327, 246 N.W. 443 (1933), a case in which *Carroll* is again explicitly accepted into Wisconsin constitutional law; and, of recent vintage, *State v. Friday,* 140 Wis. 2d 701, 412 N.W.2d 540 (Ct. App. 1987), a case in which the attorney general argued that, under the exigent-circumstances doctrine, the search was valid. For more than sixty years since *Carroll,* the exigent-circumstances doctrine has been entrenched as a proper exception to the warrant requirement under art. I,

146

sec. 11, of the Wisconsin Constitution and, as recently as last year, was recognized as such by the attorney general in cases before Wisconsin appellate courts.[1]

It should be remembered that the doctrine of exigent circumstances is based on a belief that enforcement officials ought not be limited in their police functions by requiring a warrant when, under the circumstances, evidence would disappear or guilty persons would escape if a search could not be made immediately. It is doctrine that, under the constitu-

---

[1] The majority erroneously asserts to the contrary that Wisconsin law for over sixty years has permitted a search on probable cause alone with no showing of exigent circumstances. Four cases are pertinent to the question: *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923); *Wilder v. Miller,* 190 Wis. 136, 208 N.W. 865 (1926); *Wyss v. State,* 192 Wis. 619, 213 N.W. 318 (1927); and *State v. Leadbetter,* 210 Wis. 327, 246 N.W. 443 (1933). *Hoyer,* of course, simply held that a warrant was required, although it was conceded that the situation was one that would have justified the issuance of a warrant. *Wilder,* irrespective of the language therein, involved a search of an abandoned vehicle, and this court's opinion did not test the viability of the search had the owner moved for suppression of evidence. *Wilder* posed the question of deodand— the forfeiture to the state of a vehicle carrying contraband. It is noteworthy, however, that *Carroll v. United States,* 267 U.S. 132 (1925), is quoted as authority—a case that clearly, despite language taken out of context, requires exigent circumstances as well as probable cause. *Wyss v. State,* a case relied upon by the state, is equally inapposite to the assertion. The owner of licensed premises parked a vehicle loaded with contraband liquor on the licensed premises, when the conditions of the license permitted a search of the premises without consent and without a warrant. *State v. Leadbetter* also relies upon the *Carroll* rationale, *i.e.,* "it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Leadbetter,* at 329. None of the cases relied upon by the majority stand for the naked proposition that, as a matter of law, probable cause plus an automobile ipso facto justifies a search.

tional guidelines, permits a search when it is reasonable not to require a warrant. It is a legal device designed to aid law enforcement officers. Under emergency circumstances, the need for a search is "exigent," *i.e.,* there is a necessity for immediate action, for, if the search is not performed immediately, there will never be an opportunity to search at all. In the circumstances here, however, there was no need for an immediate search to preserve the evidence. The search as conducted here was "unreasonable." A warrant could have been readily obtained, and the circuit judge found as a fact that it was practicable for the officer in this case to obtain a warrant and yet ensure that the drugs would not be removed. No need for the application of the exigent-circumstances doctrine arose in this case.

This long-standing, jurisprudentially sound practice of following the exigent circumstances doctrine in vehicle search cases should continue. The exigent-circumstances doctrine is clear; it has the benefit of a long line of interpretive cases in this jurisdiction; it draws a bright line; and it is consistent with the requirement that searches and seizures be "reasonable." Further, as this court stated recently: "Warrantless searches are per se unreasonable .... There are but few exceptions to this basic tenet of constitutional law, and to come within one of them it must be shown ... that the exigencies of the situation rendered a warrantless search imperative." *State v. Wisumier-ski,* 106 Wis. 2d 722, 737–38, 317 N.W.2d 484 (1982). *See also State v. Donovan,* 91 Wis. 2d 401, 408, 283 N.W.2d 431 (Ct. App. 1979).[2]

---

[2] "[T]he warrant requirement in our system of justice must not be *bullied* aside by extravagant claims of necessity." *California v.*

148

The majority, however, believes that Wisconsin should abandon the exigent-circumstances requirement. The majority believes that we should adopt the federal law currently in vogue and hold that probable cause alone should suffice to render warrantless car searches constitutional. Thus, the majority, concluding that the exigent-circumstances doctrine presently is not the applicable automobile search law under federal decision, holds that, because art. I, sec. 11, of the Wisconsin Constitution is the same as the United States Constitution, fourth amendment, "[b]ut for a few inconsequential differences in punctuation, capitalization and the use of the singular or plural form of a word," the two constitutional provisions ought to be construed identically. Op. at 130–131. The rationale offered to support this reasoning is that, if Wisconsin's provision and the federal provision were differently construed, confusion would be generated by the different standards. Op. at 131–132.

The majority in this case rejects the firmly established exigent-circumstances doctrine on three grounds: First, that under the United States Constitution, the exigent-circumstances doctrine is, for the moment dead; second, that, because of the similarity between the Wisconsin and the United States Constitutions, the United States Constitution automatically informs and definitively elucidates ours; and, third, that, because of the possibility for confusion should the standards differ, the standards should be identical. I find all of these reasons unpersuasive.

In the first place, as a matter of very recent history, the Supreme Court has been anything but

---

*Carney,* 471 U.S. 386, 401 (1985) (emphasis supplied), Stevens, J., dissenting.

clear on the issue of whether exigent circumstances are required before a warrantless car search will be upheld. Over the years, that court has issued conflicting pronouncements on whether exigent circumstances were required. Thus, in the 1970 case of *Chambers v. Maroney,* 399 U.S. 42 (1970), the court effectively held that exigent circumstances were no longer required, but that probable cause, standing alone, would suffice (*id.* at 51–52), while in the 1971 case of *Coolidge v. New Hampshire,* 403 U.S. 443 (1971), a plurality of the court held that, where there is probable cause but no exigent circumstances, a warrantless search may not be undertaken. *Id.* at 468.

However, even as the Court was debating whether exigent circumstances were required, the Court was also attenuating the question of what constituted exigent circumstances. Thus, in a series of cases, the Court held that the mere fact of a car's inherent mobility could constitute exigent circumstances, especially where the car would have to be left unguarded before a warrant could be obtained. *Cf. Cady v. Dombrowski,* 413 U.S. 433 (1973).

The confusing, contradictory stance of the Supreme Court on whether exigent circumstances were required continued through the case of *Cardwell v. Lewis,* 417 U.S. 583 (1974). There, the Court for the first time announced a new focus: The "reduced expectation of privacy." Under this newly struck-upon rationale for upholding theretofore illegal warrantless searches, the Court held that, while there may be an expectation of privacy to the interior, or some portion of the interior, of a car (*id.* at 591), there is no such expectation in the exterior of a car. Soon, however, the Court was saying that the interior deserved very little

privacy protection either.[3] *California v. Carney,* 471 U.S. 386 (1985).

The majority is well aware that the continued evolution of federal search-and-seizure law is affected by the composition of the United States Supreme Court at a particular time. As demonstrated above, this variability has led the United States Supreme Court to different interpretations over the course of only a few years. This, not a state court's resort to fundamental principles of freedom and to its own intelligence, is what has created uncertainty and confusion. Therefore, in addition to disagreeing with the majority on the need to follow the will-o'-the-wisp interpretations of the United States Supreme Court, I also disagree with the majority that adhering to the well understood and soundly based exigent-circumstances exception will lead to confusion because it would require us to interpret our constitution differently than the United States Constitution. On the contrary, it seems to me that, when the decisions of the United States Supreme Court are concededly variable and unstable, this court should accept that as a reason to refuse to adopt them as precedent for this state.

---

[3]A reduced, almost minimalist expection of privacy bodes ill for the continued health of a vigorous requirement for probable cause. This is because as soon as "reduced expectation" becomes *de facto* no right of privacy (which is happening even now), every inspection of a vehicle is conceptually the equivalent of a "plain view." I hope that the majority opinion, together with the Supreme Court decisions which it follows, are not the first steps to validating a system where police automobile searches will be subject to no judicial review whatsoever. The concept of probable cause in vehicle searches, which is the sole solace and justification for the majority's decision in the instant case, may well prove to be as evanescent as the doctrine of exigent circumstances.

Finally, the most compelling reason for rejecting the federal precedent in this matter is that the reasoning of these Supreme Court cases is suspect. Even the attorney general, in the oral arguments at which it urged the federal cases upon this court, conceded the reasoning of those cases "is thin," and "thin" it is.

The cases shift in their focus from one unsatisfactory rationale to another. "Exigent circumstances" becomes attenuated to "inherent mobility," and "inherent mobility" is overshadowed by "expectation of privacy."[4] In the process the clear constitutional mandate that "[t]he right of the people to be secure in their ... effects against unreasonable searches and seizures" is ignored. In other words, the current crop of United States cases goes far beyond stating what is reasonable or unreasonable in the context of warrantless car searches and actually eliminates automobiles from all constitutional protections whatsoever. While this is, for the moment, apparently acceptable under the United States Constitution, it is unacceptable under the Wisconsin Constitution.

For these reasons, I would hold that the law in Wisconsin now is the same as the law in Wisconsin has been for over sixty years: That the exception to the Wisconsin constitutional mandate that a warrant

---

[4]As Professor LaFave noted, the Court, having relied upon search-and-seizure rationales that were each, in some measure, deficient, has recently combined these faulty rationales. 3 LaFave, *Search and Seizure,* sec. 7.2(b) 34 (1987) (critiquing *California v. Carney,* 471 U.S. 386 (1985)). Professor LaFave states, "Having expressed in the past two different vehicle search theories—mobility and diminished privacy—which were each in some respects deficient, the Court now decided simply to utilize *both* together."

must be obtained for a car search can apply only when the investigating agents are faced with exigent circumstances. I would reject the invitation to accept as law the "probable cause alone" modification of the exigent-circumstances exception to the warrant requirement. While this is not the case to define what the boundaries of the exigent-circumstances doctrine are (because there were no exigent circumstances here), it is the case to reaffirm that the doctrine exists. Under it, I would hold that, where, as here, the presence of five agents, each in his own car, makes that exception inapplicable, the evidence seized without a warrant should be suppressed as the result of a search unlawful under art. I, sec. 11, of the Wisconsin Constitution. We should not abandon the stability and rationality of our understandable Wisconsin decisions for the confused and fluctuating reasoning presently employed by the federal courts. Adherence to the fundamental principles of federalism explicit in the Constitutions of the United States and of this state requires state judges, in conformity with their oaths of office, to strive for decisions based on state law that will not vary with the vagaries of the United States Supreme Court.[5] Under our federal system we are judges of an independent jurisprudential governmental entity. We should not react to every nuance and

[5] Upon this point, the concurrence cites extensively *United States v. Riviera*, 825 F.2d 152 (7th Cir. 1987), and alludes to Judge Fairchild's role in that decision. Irrespective of the qualifications of any member of the seventh circuit panel, that court is an inferior court bound by the dictates of current United States Supreme Court cases and is not free to exercise its independent and reasonable judgment. This court, by contrast, is not so bound, ought not to be so bound, and has taken an oath to independently consider questions of Wisconsin constitutional law.

mutation emanating from Washington, D.C. I dissent because effective law enforcement could have been served just as well had the officers followed the time-honored precepts of Wisconsin constitutional law, which also protect the rights of citizens by interposing the exercise of judicial discretion before there can be a search or a seizure in non-exigent circumstances.

I am authorized to state that JUSTICES ABRAHAMSON and BABLITCH join in this dissent.

WILLIAM A. BABLITCH, J. (dissenting). Although I join Chief Justice Heffernan's dissent, I write to emphasize two points: first, the reach of this case goes well beyond the innocuous sounding "warrantless search of a vehicle." This case allows a search without warrant of the entire contents of a vehicle, including trunk, suitcases, briefcases, purses and wallets, regardless of whether there is time to obtain a warrant. The only requirement is an after the fact proof that the police had probable cause to believe that the vehicle or its contents contained contraband. Second, this case does not, as argued by the concurring opinion, provide a new weapon to the police in their fight against crime. The police have always had the right, assuming there is probable cause, to search a vehicle and its contents, with or without a warrant depending on the circumstances. Instead the majority opinion provides the police with an unnecessary savings of a few minutes time at the expense of our fundamental constitutional rights to privacy and freedom from unreasonable searches and seizures.

## I.

The reach of the majority opinion extends far beyond the innocuous sounding "warrantless search of

a vehicle." It extends to a locked or unlocked trunk, suitcases, briefcase, purse or wallet contained within the vehicle.

The rule of the Fourth Amendment and Art. I, Sec. 11, has always been the warrant requirement. Its purpose was to ensure that the protections afforded by the constitution would best be guaranteed to *all* citizens by injecting the judgment of an objective third party, a judge, into the search decision. The exception to this warrant requirement, a warrantless search if "exigent circumstances" existed, was recognition by the courts that evidence might be lost in certain circumstances if the police were required to obtain a warrant in every case. "Exigent circumstance" is the term given to a relatively simple question: "Is there time to get a warrant?"

Today, the majority stands the warrant requirement and its exception on its head. With respect to the automobile and its contents, what was once the exception (a warrantless search) has now become the rule, and what was once the rule (the warrant requirement) has now become irrelevant.

The majority justifies its position by stating that citizens have a "diminished expectation of privacy" in their automobiles and the contents. To the contrary, at least with respect to purses, briefcases, luggage, and the like, I believe most law abiding Wisconsin citizens have a very high expectation of privacy in these items regardless of whether that purse, that briefcase, or that luggage happens to be in the home, in the office, on their person, or in their automobile. The reasoning of the majority is, at the very least, suspect.

## II.

It is most unfortunate that the constitutional rights guaranteed all citizens invariably get addressed

155

in this court only in the context of the rights of a guilty person who, but for an alleged constitutional transgression, would stand convicted. It is easy to forget that the rights we declare have applicability far beyond the defendant who appears before us. The rights we declare afford protections to that vast number of law abiding citizens who have expectations of privacy in their purses, their wallets, their briefcases, and other similar personal possessions regardless of their location. Until today, those law abiding citizens had every right to demand that the police get a warrant to search such items if found in their vehicle in the absence of an emergency situation. No more. Why?

The concurring opinion appears to provide the motivation for the majority's opinion. It is, the concurring opinion says, to provide a "small but hopefully significant addition to the arsenal of law enforcement in the war on drugs. ..." Concurring op. at 141. The majority's opinion will provide no such thing. A warrantless search of a vehicle and its contents, in the absence of exigent circumstances, may save a few minutes of a police officer's time, but it most definitely will not provide a new weapon for police in the fight against drugs. The police have long had available the "weapon" of a search of a vehicle for drugs when they have probable cause to believe the vehicle contains drugs. If an emergency existed, they could search without a warrant. If an emergency did not exist they had to first obtain a warrant. In today's era of advanced technological communications, that is no formidable obstacle. The possible loss of a few minutes time in order to have an objective third party pass judgment on the reasonableness of the search is a small price to pay for the constitutional guarantees

that the Fourth Amendment and Art. I, Sec. 11 provide for all citizens, not just the guilty.

The concurring opinion maintains that the emergency requirement "can result in the loss to the state of essential evidence even though probable cause existed to make such search." Concurring op. at 139. If that is the case, the facts before us do not present such circumstances. In fact, the instant case represents a perfect example of the reasonableness of the emergency requirement. The suspect was already arrested, far from his vehicle. Neither he, nor anyone else except the police, had access to it. There not only was more than adequate time to obtain a warrant, there was not a scintilla of chance that any incriminating evidence would be lost in the time necessary to obtain a warrant.

So what is this "new weapon" the majority apparently believes they have now given the police? Certainly it is not the right to search without a warrant. Police have always had that right when they had probable cause and no time to obtain a warrant. The probable cause requirement remains. Thus, the only "new weapon" is that the police need not bother to procure a warrant even when there is more than adequate time to obtain one.

The constitutional rights and freedoms we all enjoy will never be removed in a wholesale sweep. Instead, the attacks will be on the periphery, in increments so small as to be nearly indiscernible. And bit by bit these rights and freedoms can be eroded until, one day, we awake to find that what could never succeed by frontal attack has succeeded incrementally. This case presents such a gradual erosion of rights and does so unnecessarily.

There is much in society today that creates fierce tension in the rights and freedoms essential to democracy. We all want a drug free society. We all want crime eradicated. Few people, however, understand or even sense the pressure these laudable objectives place on equally desirable goals of privacy in our home and possessions, and freedom from arbitrary governmental action. Much is at stake as we attempt to balance these competing interests. This court has a critical role in framing and determining these issues, and we should do so not just in terms of what the people fear, but in terms of the rights and freedoms that they value.

Unfortunately, the effect of the majority's holding on law abiding citizens who, because of police error have their most personal belongings searched without a warrant, will rarely, if ever, be seen by this court. A few minutes of police time to obtain a warrant when there is time to do so is a small price to pay for the protections that the warrant requirement gives all citizens, most particularly the law abiding.

I am authorized to state that JUSTICE SHIRLEY S. ABRAHAMSON joins in this dissent.